### STATE OF CONNECTICUT *v.* JUAN ORTIZ
### (13770)

Peters, C. J., Shea, Glass, Covello and Santaniello, Js.

Argued November 9, 1990—decision released March 5, 1991

*John R. Gulash, Jr.,* with whom, on the brief, was *Peter McGuinness,* for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *Harry J. Lyons,* assistant state's attorney, for the appellee (state).

GLASS, J. The state charged the defendant, Juan Ortiz, with the crime of murder in violation of General Statutes § 53a-54a (a).[1] At his trial, the defendant raised the affirmative defense of extreme emotional disturbance provided for by § 53a-54a (a), and introduced circumstantial evidence in accordance with General Statutes § 53a-7[2] to establish that he had been volun-

---

[1] "[General Statutes] Sec. § 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] "[General Statutes] Sec. § 53a-7. EFFECT OF INTOXICATION. Intoxication shall not be a defense to a criminal charge, but in any prosecution for

tarily intoxicated at the time of the crime. The jury nonetheless found the defendant guilty of murder, and a judgment of conviction followed. He was sentenced to life imprisonment.

In his appeal, the defendant challenges various aspects of the trial court's instructions to the jury. He claims that the court should not have: (1) instructed the jury that the reasonableness of the explanation or excuse for his alleged extreme emotional disturbance should be measured not from the defendant's viewpoint, but from the viewpoint of a reasonable man in the defendant's situation and under the circumstances as he believed them to be; (2) instructed the jury that the defendant's evidence of his intoxication should not be considered in determining whether he had possessed the mental state of recklessness necessary for conviction of the lesser included offenses of manslaughter in either the first or the second degree; (3) instructed the jury that in weighing the testimony of two expert psychiatric witnesses called by the defense, the defendant's interest in the outcome of the case and the truthfulness of his statements to the experts should be considered; (4) denied his written request for an instruction that it was the state's burden to prove beyond a reasonable doubt that he had formed the specific intent necessary for conviction of murder in spite of his alleged intoxication; and (5) denied his oral request for an instruction that he was entitled to rely upon circum-

---

an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

stantial evidence to establish that he had been intoxicated and/or under the influence of an extreme emotional disturbance at the time of the crime, and that he need not prove the facts inferable from that evidence beyond a reasonable doubt.[3] We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. At approximately 7 p.m. on June 7, 1988, police officer Vernon Woods was dispatched to investigate a stabbing reported to have occurred at 46 Wood Avenue in Bridgeport. Upon his arrival at that location, Woods observed a crowd of people, two large puddles of blood and a knife on a cardboard box. Near the corner of the building, Woods discovered the body of a woman who had been stabbed several times. The woman, subsequently identified as Myrna Ortiz, the wife of the defendant, had died immediately from a loss of blood resulting from a knife wound to the back of her left chest that had penetrated her left lung and heart. Two eyewitnesses testified at trial that they had seen the defendant stab the victim in the neck and the back, wipe the knife on his pants and place it on a cardboard box and then drag her body into an alley. The witnesses further testified that the defendant had thereafter driven away from the scene in his automobile.

I

The defendant first claims that the trial court improperly instructed the jury on his affirmative defense of

---

[3] The defendant also claims that the court should have instructed the jury that his evidence of his intoxication should be considered in determining whether, from his viewpoint, the explanation or excuse for his alleged extreme emotional disturbance was reasonable. Because we hold in Part I, infra, that under General Statutes § 53a-54a (a) the reasonableness of the explanation or excuse for a defendant's extreme emotional disturbance is to be determined not from the defendant's viewpoint, but from the viewpoint of a person in the defendant's situation and under the circumstances as he believed them to be, we need not address this claim.

extreme emotional disturbance. The instruction challenged by the defendant is as follows: "Please note that you are to measure the reasonableness or excuse of the action of the defendant not from the defendant's viewpoint but rather from the viewpoint of a person, a *reasonable man* in the defendant's situation, under the circumstances as the defendant believed them to be." (Emphasis added.) The defendant argues that this instruction was inaccurate because under § 53a-54a (a), the reasonableness of the explanation or excuse for his extreme emotional disturbance must be determined from *his viewpoint,* rather than that of a reasonable man in his situation and under the circumstances as he believed them to be. He therefore maintains that the court incorrectly substituted a "reasonableness to a 'reasonable man' " standard for what he views as the "reasonableness to the defendant" standard embodied in the statute. He claims that this alleged alteration of the statutory standard required him to prove more than was necessary to prevail on his affirmative defense in violation of his constitutional right to present a defense.[4] We disagree.

Section § 53a-54a (a) provides in pertinent part that "it shall be an affirmative defense [to the crime of murder] that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be . . . ."[5] Although the construction of the word "person" in the statute has not been the focus of any case considered by this court,

---

[4] Although the defendant characterizes this claim as constitutional, we consider it as involving only a question of statutory construction.

[5] See footnote 1, supra.

we nonetheless have addressed the affirmative defense of extreme emotional disturbance on several occasions. See *State* v. *Forrest,* 216 Conn. 139, 578 A.2d 1066 (1990); *State* v. *Casey,* 201 Conn. 174, 513 A.2d 1183 (1986); *State* v. *Fair,* 197 Conn. 106, 496 A.2d 461 (1985), cert. denied, 475 U.S. 1096, 106 S. Ct. 1494, 89 L. Ed. 2d 895 (1986); *State* v. *Asherman,* 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *D'Antuono,* 186 Conn. 414, 441 A.2d 846 (1982); *State* v. *Zdanis,* 182 Conn. 388, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981). The seminal case interpreting the scope and meaning of § 53a-54a (a), however, is *State* v. *Elliott,* 177 Conn. 1, 411 A.2d 3 (1979). The court's instruction in this case was based in part upon certain language in our decision in *Elliott.*

In *State* v. *Elliott,* we held that the affirmative defense of extreme emotional disturbance "does not require a provoking or triggering event; or that the homicidal act occur immediately after the cause or causes of the defendant's extreme emotional disturbance; or that the defendant have lost all ability to reason." Id., 7. The particular language in *Elliott* from which the trial court drew its instruction was our statement that § 53a-54a (a) "sets forth a standard that is objective in its overview, but subjective as to the defendant's belief"; id.; and, with regard to the objective element contained in the statute, our statement that "the reasonable man yardstick is only used to determine the reasonableness of the explanation or excuse of the action of the defendant from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." Id.

We are unpersuaded that the above statements in *Elliott,* and the trial court's instruction drawn there-

from, are inconsistent with the proper construction of § 53a-54a (a). The statute contains no indication that the determination of whether there was a reasonable explanation or excuse for a defendant's extreme emotional disturbance should be made entirely from the defendant's viewpoint. Rather, the statute plainly requires that determination to be made from the viewpoint of "a person in the defendant's situation under the circumstances as the defendant believed them to be." If the legislature had intended the word "person" to mean "the defendant," it easily could have said so.

Furthermore, the legislature need not have specifically set forth the particular subjective characteristics of a defendant, his situation and his belief as to the circumstances, that should be attributed to the "person" from whose viewpoint the determination of reasonableness must be made if it intended that person to be the defendant. The specific itemization of only certain of the myriad subjective characteristics that could be said to constitute a defendant's "viewpoint" connotes the legislative intent that all of the defendant's other subjective characteristics, including his personal perception of what is reasonable, should not be attributed to the "person" from whose viewpoint the determination of reasonableness must be made. See *State* v. *Kish,* 186 Conn. 757, 765–66, 443 A.2d 1274 (1982); see also 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 47.23. Construing § 53a-54a (a) to require that the reasonableness of a defendant's extreme emotional disturbance be determined solely from his viewpoint would therefore be contrary to the intent of the legislature as manifested in the plain language of the statute.

It is significant[6] that the New York Court of Appeals in construing New York Penal Law § 125.25 (1) (a), the

---

[6] Because General Statutes § 53a-54a (a) is almost a literal copy of New York Penal Law § 125.25 (1) (a), we find it appropriate to resort to the deci-

similar New York statute on the affirmative defense of extreme émotional disturbance, has refused to adopt the standard of whether a defendant's "emotional reaction, from his own subjective point of view, was supported by a reasonable explanation or excuse." *People v. Casassa,* 49 N.Y.2d 668, 675, 404 N.E.2d 1310, 427 N.Y.S.2d 769, cert. denied, 449 U.S. 842, 101 S. Ct. 122, 66 L. Ed. 2d 50 (1980). In *Casassa,* the court declined to adopt this "wholly subjective" standard primarily because it conflicts with the comments of the drafters of the Model Penal Code of the American Law Institute, Tentative Draft No. 9, § 201.3 (1) (b), upon which both the New York statute and § 53a-54a (a) were modeled. See *State* v. *Elliott,* supra, 8; *People* v. *Casassa,* supra, 678–79. The court found instructive, for example, the drafters' comment that " 'the ultimate test' " under § 201.3 (1) (b) " 'is objective; there must be a "reasonable" explanation or excuse for the actor's disturbance.' " *People* v. *Casassa,* supra, 679, quoting Model Penal Code § 201.3 (1) (b), comment, p. 41 (Tent. Draft No. 9 1959); see *People* v. *Shelton,* 88 Misc. 2d 136, 149, 385 N.Y.S.2d 708 (1976), aff'd, 78 App. Div. 2d 821, 434 N.Y.S.2d 649 (1980).

On the basis of its reading of this and other comments, the court concluded that the drafters had "suggest[ed] a standard of evaluation which contains both subjective and objective elements"; *People* v. *Casassa,* supra; and therefore refused to interpret the New York statute in a manner obscuring the objective element of that standard. Subsequent New York decisions accordingly have characterized the affirmative defense of extreme emotional disturbance as "contain[ing] two elements, one subjective and one objective." *People* v.

sions of New York courts construing the common statutory language. See *State* v. *Asherman,* 193 Conn. 695, 732 n.12, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Elliott,* 177 Conn. 1, 4–5, 411 A.2d 3 (1979).

*Shegog,* 155 App. Div. 2d 891, 547 N.Y.S.2d 725 (1989), appeal denied, 75 N.Y.2d 818, 551 N.E.2d 1246, 552 N.Y.S.2d 568 (1990); see *People* v. *Moye,* 66 N.Y.2d 887, 890, 489 N.E.2d 736, 498 N.Y.S.2d 767 (1985).

Like the court in *Casassa,* we conclude that evaluating the reasonableness of a defendant's extreme emotional disturbance solely from his subjective viewpoint would be inconsistent with the drafters' evident intention to create a standard comprising both subjective and objective elements. We also find the defendant's proposed standard of "reasonableness to the defendant" particularly inimical to certain other pertinent comments of the drafters not referred to in *Casassa.* For instance, the drafters state that although § 201.3 (1) (b) was intended to embody "a larger element of subjectivity" than the common law "heat of passion" defense, "it is only the actor's 'situation' and the 'circumstances as he believed them to be,' *not his scheme of moral values,* that are thus to be considered."[7] (Emphasis added.) Model Penal Code § 201.3 (1) (b), comment, p. 41 (Tent. Draft No. 9 1959). If the reasonableness of the explanation or excuse for a defendant's extreme emotional disturbance were determined by ascertaining whether the disturbance was reasonable to him, his subjective scheme of moral values would become a consideration in the "reasonableness"

[7] This notion of excluding a defendant's moral values from the subjective aspect of the inquiry is reiterated in the comments explaining the intended meaning of the phrase "the defendant's situation": "On the one hand, it is clear that personal handicaps and some external circumstances must be taken into account. Thus, blindness, shock from traumatic injury, and extreme grief are all easily read into the term 'situation.' . . . On the other hand, it is equally plain that the *idiosyncratic moral values are not part of the actor's situation.* An assassin who kills a political leader because he believes it is right to do so cannot ask that he be judged by the standard of a reasonable extremist. Any other result would undermine the normative message of the criminal law." (Emphasis added.) Model Penal Code § 201.3 (1) (b), revised comments, p. 62 (Official Draft 1962).

inquiry, a result plainly not intended by the drafters. Such an approach would also eliminate the "barrier against debilitating individualization of the standard" that the drafters intended to create by requiring that the explanation or excuse for a defendant's extreme emotional disturbance be reasonable. Model Penal Code, revised comments, p. 62 (Official Draft 1962).

We therefore decline to modify *Elliott* and its progeny after more than eleven years by interpreting § 53a-54a (a) to require the reasonableness of a defendant's extreme emotional disturbance to be determined solely from his subjective viewpoint. Such an interpretation would eviscerate the element of objectivity that the drafters intended to preserve, and that our legislature similarly intended to preserve by enacting a statute that "sets forth a standard that is objective in its overview, but subjective as to the defendant's [situation and] belief."[8] *State* v. *Elliott,* supra, 7.

Moreover, the court sufficiently conveyed to the jury both the objective and subjective elements involved in the determination of "reasonableness" under the statute by its instruction that the reasonableness of the defendant's extreme emotional disturbance should be determined from the viewpoint of a reasonable man, placed in the defendant's situation, under the circumstances as the defendant believed them to be. While this instruction did not correspond to the precise lan-

[8] The defendant contends that the objective element of the standard for evaluating the reasonableness of extreme emotional disturbance should be "whether the actor's loss of self-control can be understood in terms that arouse sympathy in the ordinary citizen." Although this language of this suggested objective element finds support in the comments of the drafters; see Model Penal Code § 201.3 (1) (b), comment, p. 48 (Tent. Draft. No. 9 1959); see also *State* v. *Elliott,* 177 Conn. 1, 8, 411 A.2d 3 (1979); neither the drafters nor our legislature chose to include such language in the statutory standard. Consequently, we decline to read that language into the standard embodied in General Statutes § 53a-54a (a). See *Winslow* v. *Lewis-Shepard, Inc.,* 216 Conn. 533, 540, 582 A.2d 1174 (1990).

guage of § 53a-54a (a),[9] it was entirely consistent with the dual nature of the determination of reasonableness required under the statute. We therefore conclude that the court properly instructed the jury on the affirmative defense of extreme emotional disturbance.

## II

The defendant next claims that the court abridged his federal and state constitutional rights to due process by instructing the jury that evidence of his intoxication should not be considered in determining whether he had possessed the mental state of recklessness necessary for conviction of the lesser included offenses of manslaughter in either the first or the second degree. In support of his claim, the defendant argues that although evidence of voluntary intoxication is irrelevant to negate recklessness, such evidence is highly relevant as proof of recklessness. See *State* v. *Shine*, 193 Conn. 632, 642, 479 A.2d 218 (1984). He therefore contends that because the jury was not instructed that it could consider such evidence as proof that his mental state had been the less culpable one of recklessness, it is reasonably possible that the jury was misled into rejecting a proper basis for convicting him of manslaughter rather than murder. Due to his failure to preserve this claim by submitting a request to charge on these lesser included offenses or by taking an exception to the charge as given; see Practice Book § 852; the defendant seeks review of the claim under *State*

---

[9] In this respect, we note that immediately prior to the instruction challenged by the defendant, the court admonished the jury: "If you find that the defendant acted under the influence of emotional disturbance and that it was extreme, you must then consider whether there is a reasonable explanation or excuse for such disturbance. *You must measure the reasonableness from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.*" (Emphasis added.) This instruction conforms to the language of General Statutes § 53a-54a (a) and does not contain the disputed reference to a "reasonable man."

v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and alternatively, as plain error under Practice Book § 4185.

In *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), we reformulated the guidelines for appellate review of unpreserved constitutional claims articulated in *State* v. *Evans,* supra. See *State* v. *Chicano,* 216 Conn. 699, 704, 584 A.2d 425 (1990). We held that a defendant can prevail on such a claim "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate the harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* supra. Because a lesser included offense instruction is purely a matter of common law, and therefore does not implicate constitutional rights; see *State* v. *Herring,* 210 Conn. 78, 105, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989); *State* v. *Thomas,* 205 Conn. 279, 282, 533 A.2d 553 (1987); *State* v. *McIntosh,* 199 Conn. 155, 158, 506 A.2d 104 (1986); *State* v. *Whistnant,* 179 Conn. 576, 581, 427 A.2d 414 (1980); the defendant has failed to satisfy the second condition of *Golding.* Accordingly, his claim for reversal predicated on the alleged impropriety of the court's lesser included offense instructions necessarily fails.

The defendant's claim is also unreviewable as plain error under § 4185. Plain error review is reserved for those " 'truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the

judicial proceedings.' " *State* v. *King,* 216 Conn. 585, 591, 583 A.2d 896 (1990). Since the jury, having been instructed not to consider lesser included offenses unless it found the defendant not guilty of the greater offense of murder, found the defendant guilty of murder, we cannot say that the instruction challenged by the defendant undermined the fairness of his trial or resulted in a manifest injustice to him.[10]

### III

The defendant next claims that he was denied a fair trial by the court's instruction to the jury concerning the weight of the testimony given by two expert psychiatric witnesses called by him to establish his affirmative defense of extreme emotional disturbance. The court instructed the jury to consider that the defendant already had been accused of murder when the experts examined him, and that, to the extent that their opinions were based upon what the defendant had told them, their testimony should be weighed accordingly. Because the defendant failed to preserve this claim at trial, he seeks review under *State* v. *Evans,* supra, or alternatively, under the plain error provision of Practice Book § 4185.

In *State* v. *Golding,* supra, we held that a defendant can prevail on an unpreserved constitutional claim only if all of four enumerated conditions are satisfied and that, absent satisfaction of any one of those conditions, the defendant's claim will fail. To satisfy the second

---

[10] The defendant's reliance upon *State* v. *Preyer,* 198 Conn. 190, 502 A.2d 858 (1985), as authority for considering the court's instruction as plain error is misplaced. In *Preyer,* we found it evident from the instruction given that the court had overlooked a statute providing for a defense to the crime charged. Id., 199. Since the defendant's claim concerns lesser included offense instructions, the alleged inadequacy of which is not claimed to have arisen from the court's failure to take into account an applicable statute, *Preyer* is inapposite to this case.

*Golding* condition, the claim must be one "of constitutional magnitude alleging the violation of a fundamental right . . . ." Id., 239–40. The claim raised by the defendant is not of such constitutional magnitude. *State* v. *McCall,* 187 Conn. 73, 88–89, 444 A.2d 896 (1982). Accordingly, we decline to review it under *Golding.*

The defendant's claim is similarly unreviewable as plain error under § 4185. Plain error review " 'is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " *State* v. *King,* supra. The error claimed here does not merit such review.

## IV

The defendant next claims that because he adduced evidence at trial from which the jury could have inferred that he had been intoxicated at the time of the crime, the court should have granted his written request for an instruction that it was the state's burden to prove beyond a reasonable doubt that he had formed the specific intent to kill his wife in spite of his alleged intoxication. The defendant contends that the omission of such an instruction placed the burden upon him to persuade the jury of his intoxication beyond a reasonable doubt in violation of his constitutional right to due process of law.[11] We disagree.

Our review of the defendant's claim requires that we examine the court's entire charge to determine whether it is reasonably possible that the jury could have been

[11] Without deciding whether the defendant's claim is one of constitutional dimension, we note that "[a]n erroneous instruction, even of constitutional dimension, is harmless if, viewed in the context of the charge as a whole, there is no reasonable possibility that the jury [was] misled. *State* v. *Hines,* 187 Conn. 199, 209, 445 A.2d 314 (1982)." *State* v. *Carrione,* 188 Conn. 681, 685, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983).

misled by the omission of the requested instruction. See *State* v. *Rollinson,* 203 Conn. 641, 665, 526 A.2d 1283 (1987); *State* v. *Utz,* 201 Conn. 190, 209, 513 A.2d 1191 (1986). While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a court need not tailor its charge to the precise letter of such a request. *State* v. *Bennett,* 172 Conn. 324, 330, 374 A.2d 247 (1977). If a requested charge is in substance given, the court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. See *State* v. *Jennings,* 216 Conn. 647, 663, 583 A.2d 915 (1990); *State* v. *Casey,* 201 Conn. 174, 178, 513 A.2d 1183 (1986). " 'Whether a charge is possibly misleading depends on the substance rather than the form of what is said.' " *State* v. *Stevenson,* 198 Conn. 560, 571, 504 A.2d 1029 (1986); see *State* v. *McMurray,* 217 Conn. 243, 253, 585 A.2d 677 (1991); *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982).

Our perusal of the charge as a whole discloses that the court instructed the jury substantially as the defendant requested, and consequently, it is not reasonably possible that the jury was misled as to the scope of the state's burden of proof on the element of specific intent. Initially, we note that the court informed the jury that the defendant was not required to prove his innocence, and throughout its charge repeatedly emphasized that it was the state's burden to prove his specific intent beyond a reasonable doubt. Although repeated references to the presumption of innocence and the state's burden of proof, alone, might be insufficient in a particular case to dispel the possibility of juror misinterpretation; see *Sandstrom* v. *Montana,* 442 U.S. 510, 518 n.7, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *State* v. *Stankowski,* 184 Conn. 121, 152, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); see also *State* v. *Fuller,* 199 Conn. 273, 280,

506 A.2d 556 (1986); the court in this case did not confine its charge to an explication of general principles of law. Rather than leaving the jury to its own devices in assessing the role of intoxication in the case, the court provided the jury with an accurate and comprehensive explanation of the relationship between the state's burden of proving the element of specific intent and the defendant's evidence of his intoxication. See *State* v. *Rollinson,* supra; compare *State* v. *Fuller,* supra.

The court prefaced its instruction on intoxication with a reminder to the jury that the defendant had presented testimony to the effect that he had been intoxicated at the time of the crime, evidence that the jury "must consider in reaching [its] conclusion" whether the state had proved his specific intent beyond a reasonable doubt. The court then recited the statutory definition of the word "intoxication"; see General Statutes § 53a-7;[12] as well as the statutory explanation of the role of intoxication and the relevance of evidence thereof in a prosecution for a specific intent offense: "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged . . . ." General Statutes § 53a-7; see *State* v. *Stevenson,* supra, 570. Immediately thereafter, the court carefully described how the statute applied in the context of this case and in connection with the defendant's evidence of his intoxication: "If you find that the defendant was intoxicated at the time of the crime, you may take this fact into consideration in determining whether he was in such a state of intoxication as to be incapable of forming the required specific intent which is a necessary element for the commission of the crime of murder. . . . Any intoxi-

---

[12] See footnote 2, supra.

cation, not merely total intoxication, may be considered in determining whether the defendant possessed the requisite intent." The court reinforced this concept in the minds of the jury by rephrasing and restating it: "If you find that the defendant was under the influence of an intoxicant at the time of the alleged act, you must then determine what effect, if any, this voluntary intoxication had on his ability to form this specific intent required to commit the alleged crime."

These instructions, coupled with the court's general instructions on the presumption of innocence and the state's burden of proof, adequately apprised the jury that the defendant had introduced evidence of his intoxication for the purpose of negating the element of specific intent, and that the state was required to overcome that evidence by establishing, beyond a reasonable doubt, that he nonetheless had formed the specific intent necessary for conviction of the crime of murder. The combined effect of the instructions was therefore substantially equivalent to the charge requested by the defendant. See *State* v. *Butler,* 207 Conn. 619, 635, 543 A.2d 270 (1988). Moreover, at no time did the court suggest that the jury should not consider the defendant's evidence of his intoxication unless it passed an unlawful evidentiary threshold. The court simply instructed the jury to consider the evidence, along with "all of the testimony and evidence and the circumstances," in reaching their ultimate conclusion as to whether the state had satisfied its burden of proving the defendant's specific intent. See *State* v. *Utz,* supra, 210; *State* v. *Stevenson,* supra, 571–72; compare *Cool* v. *United States,* 409 U.S. 100, 103, 93 S. Ct. 354, 34 L. Ed. 2d 335 (1972). No limitation was imposed upon the jury's consideration of the evidence.

Accordingly, we conclude that there was no reasonable possibility that the jury could have misunderstood the court's instructions to mean that the defendant was

required to prove his intoxication beyond a reasonable doubt, or that the state's burden of proof did not encompass the burden of proving beyond a reasonable doubt that the defendant specifically intended to kill his wife in spite of his alleged intoxication. We therefore conclude that the court's omission of the instruction could not have misled the jury.

## V

Finally, the defendant challenges the court's instruction concerning circumstantial evidence as violative of his federal and state constitutional rights to a fair trial and to present a defense.[13] The disputed instruction was given in the context of the court's general charge on the state's burden of proof, and is as follows: "It is only the essential elements of the crime . . . that must be proved beyond a reasonable doubt. Proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact. You may apply the rule of circumstantial evidence. This rule involves the offering of evidence of facts from which you are asked to infer the existence of another fact or set of facts. Such an inference may be made provided two elements in the application of this [circumstantial evidence] rule are satisfied—that the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt and that the inference asked to be drawn is logical and reasonable and not the result of speculation or conjecture. You must be satisfied that the fact to be inferred has been proved beyond a reasonable doubt. It is, however, only where a particular subordinate fact is essential to the proof of an element of the crime that it must be proved beyond a reasonable doubt."

---

[13] Because the defendant has not separately analyzed his federal and state due process claims, we consider only his federal claim. See *State* v. *McMurray,* 217 Conn. 243, 248 n.6, 585 A.2d 677 (1991).

The defendant claims that by failing to give separate instruction to the jury that he too could rely upon circumstantial evidence, and that the facts inferable from his circumstantial evidence need not be proved beyond a reasonable doubt, the court misled the jury by setting a single "beyond a reasonable doubt" standard for drawing inferences from circumstantial evidence whether offered by the state or the defendant, including the evidence he presented to establish that he had been intoxicated and/or under the influence of an extreme emotional disturbance at the time of the crime. We disagree.

As a threshold matter, we note that the defendant also maintains that we should resolve his claim by inspecting the court's circumstantial evidence instruction in isolation from the remainder of the charge. He argues that this method of analysis is appropriate because he has challenged the instruction in relation to circumstantial evidence, and intent was the principal factual issue at his trial. These factors alone, however, do not warrant an isolated examination of the court's instruction. Such exacting scrutiny is reserved for cases presenting these factors in combination with an improper suggestion to the jury that the state's burden of proof is something less than the "beyond a reasonable doubt" standard. See *State* v. *Whelan,* 200 Conn. 743, 757, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985); compare *State* v. *Mercer,* 208 Conn. 52, 73, 544 A.2d 611 (1988); *State* v. *McDonough,* 205 Conn. 352, 358, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988). Since the trial court properly instructed the jury that it was the state's burden to prove all of the essential elements of the crime charged beyond a reasonable doubt, we decline to deviate from the traditional analysis of claims challenging jury instructions.

Our task in reviewing the defendant's claims is therefore to examine the court's circumstantial evidence instruction in the context of the charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. *State* v. *Mercer,* supra; *State* v. *Hufford,* 205 Conn. 386, 407–408, 533 A.2d 866 (1987); see *State* v. *Dyson,* 217 Conn. 498, 501, 586 A.2d 610 (1991). Because the defendant's claim regarding circumstantial evidence of his intoxication implicates concerns distinct from those implicated by his claim regarding circumstantial evidence of his extreme emotional disturbance, we consider the claims separately.

A

The defendant's first circumstantial evidence claim involves the evidence that he presented to establish that he had been intoxicated at the time of the crime. After reviewing the court's entire charge in connection with this claim, we are unpersuaded that it is reasonably possible that the jury was misled by the court's omission of a separate instruction on this evidence.

The court gave its charge on circumstantial evidence as part of its general charge on the state's burden of proof. The instruction was preceded by the following statements: "The accused does not have to prove that he did not commit the offense. The State must prove that he did. The presumption of innocence applies to each and every element of the crime. . . . Its only effect is to place upon the State the burden of proving the defendant's guilt beyond a reasonable doubt. . . . It is only the essential elements of the crime . . . that must be proved beyond a reasonable doubt." As more extensively discussed in Part IV, supra, the court separately and comprehensively instructed the jury on the role of intoxication in the case, at no time suggesting that the defendant's circumstantial evidence of his intoxication should be ignored unless it satisfied the

"beyond a reasonable doubt" standard distinctly set forth as applicable to the state. We therefore conclude that it is not reasonably possible that the jury could have been misled to apply the "beyond a reasonable doubt" standard to the facts inferable from the defendant's circumstantial evidence of his intoxication.

We are likewise unpersuaded that it was misleading for the court to omit a separate instruction that the defendant could rely upon circumstantial evidence to establish his intoxication. Although the defendant was entitled to present evidence of his intoxication in order to negate the element of specific intent; see General Statutes § 53a-7; his choice to do so did not impose upon him any burden to establish his intoxication or otherwise persuade the jury that a reasonable doubt as to his guilt existed. Even if the defendant's evidence of his intoxication was insufficient to raise a reasonable doubt, or if the defendant had presented no evidence, the jury would have been required to acquit him of the crime of murder if the state's evidence, or the lack thereof, did not persuade the jury of the defendant's specific intent beyond a reasonable doubt.[14] The instruction requested by the defendant could therefore have misled the jury to believe that if he did not sufficiently "establish" his intoxication, he could not be acquitted on the basis of a reasonable doubt growing from any perceived inadequacy in the state's proof. Not only could such an instruction confuse a jury, but also, without properly emphasizing that the defendant had no burden to prove his innocence, such an instruction could dilute the constitutional protection afforded to an

---

[14] While we have held that a defendant must produce evidence sufficient to raise a reasonable doubt in order to warrant the submission of an instruction on intoxication to the jury; see *State* v. *Carter,* 189 Conn. 611, 627–28, 458 A.2d 369 (1983); we have never suggested that a defendant must establish a reasonable doubt as to his lack of specific intent in order to secure an acquittal.

accused "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); see *State* v. *Gabriel,* 192 Conn. 405, 413, 473 A.2d 300 (1984).

Consequently, we find it sufficient that the court simply instructed the jury that it "must consider" the defendant's wholly circumstantial evidence of his intoxication, along with "all of the testimony and [the] evidence and the circumstances," in making its properly focused determination of whether the state had met its burden of proving his specific intent beyond a reasonable doubt. Accord *United States* v. *Gulino,* 588 F.2d 256, 257–58 (9th Cir. 1978); compare *Cool* v. *United States,* 409 U.S. 100, 103, 93 S. Ct. 354, 34 L. Ed. 2d 335 (1972). In the absence of a fair indication to the contrary, we presume that as instructed, the jury considered all of the evidence in the case, including the defendant's circumstantial evidence of his intoxication, in making this determination. See *State* v. *Jennings,* 216 Conn. 647, 664, 583 A.2d 915 (1990).

B

The defendant's second circumstantial evidence claim concerns the evidence that he adduced to prove his affirmative defense of extreme emotional disturbance. He asserts that the court's failure to give a separate circumstantial evidence instruction with respect to this evidence misled the jury to apply the "beyond a reasonable doubt" standard to the facts inferable from the evidence. Upon consideration of the court's charge as a whole, we are unpersuaded.

As previously noted, the court's circumstantial evidence instruction was given in the context of its general charge on the state's burden of proof. Subsequently, the court separately instructed the jury on the affirm-

ative defense of extreme emotional disturbance. Its instruction on the affirmative defense did not include any indication that the jury should apply the "beyond a reasonable doubt" standard to the defendant's circumstantial evidence of his extreme emotional disturbance. Rather, the court specifically distinguished the standard of proof applicable to the defendant: "[E]xtreme emotional disturbance is an affirmative defense and the burden is upon the defendant to prove the three elements of his defense by a *preponderance of the evidence*. . . . If you find that the defendant has sustained his burden of proving his defense by a *preponderance of the evidence,* then you must find him not guilty of murder." (Emphasis added.) See General Statutes § 53a-12 (b).[15]

Furthermore, the court went on to describe the manner in which the "preponderance" standard should be applied: "[T]ake *all of the evidence that has been offered on this issue by both the defendant and the State* and weigh and balance it. If the better and weightier evidence inclines in the defendant's favor, then he sustains his burden of proving extreme emotional disturbance." (Emphasis added.) Since the defendant's evidence in support of his affirmative defense was purely circumstantial, this instruction clearly informed the jury, albeit implicitly, that the evidence should be considered in determining whether the defendant satisfied his burden of proof by a preponderance of the evidence. We therefore conclude that the court's omission of a separate instruction with respect to the defendant's circumstantial evidence of his extreme emotional disturbance could not possibly have misled the jury. See *State* v. *Mercer,* supra; *State* v. *Hufford,* supra.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[15] General Statutes § 53a-12 (b) provides: "When a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence."