******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAMES E.
CUNNINGHAM, SR.
(AC 38322)

Sheldon, Prescott and West, Js.

*Argued May 23—officially released September 27, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Kahn, J.)

*Glenn W. Falk*, assigned counsel, with whom, on the
brief, was *John Boeglin*, law student intern, for the
appellant (defendant).

*Ryan Coyne*, certified legal intern, with whom were
*Harry Weller*, senior assistant state's attorney, and, on
the brief, *John C. Smriga*, state's attorney, and *Joseph
J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, James E. Cunningham, Sr., appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a), and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). The defendant subsequently pleaded guilty to a charge of criminal possession of a firearm in violation of General Statutes § 53a-217 (a), as charged in a part B information. On appeal, the defendant claims that the trial court violated his sixth amendment right to present a complete defense to the charge of murder by precluding defense counsel during closing argument from delineating the elements of the lesser included offense of manslaughter in the first degree with a firearm in order to highlight the mental state required for murder.[1] We affirm the judgment.

The jury reasonably could have found the following facts. The victim, Daniel Speller, and the defendant were friends who had lived together for several weeks at a house in Bridgeport. On the night of August 5, 2012, an altercation concerning money arose between the defendant, who was wearing his .45 caliber pistol, and the victim. Sometime after midnight on August 6, the defendant shot the victim three times—in the chest, arm, and leg—outside of the house in which they lived. The fatal shot struck the victim in his chest and caused him to bleed to death within minutes. The defendant then dragged the victim down some porch stairs and enlisted the help of a neighbor to wrap the victim's body in a white tarp and strap it to a metal rack mounted to the back of the defendant's motor vehicle, a Hummer.

The defendant drove the Hummer with the victim's body on it to his grandmother's house, throwing the murder weapon into a nearby river on his way.[2] When he arrived at his grandmother's house, the defendant drove the Hummer into her backyard and concealed it in a hedge bordering a large, wooded area. At some time during the night, he returned to the Hummer and further covered the victim's body with two plastic garbage bags. Police ultimately discovered the concealed Hummer and the victim's body the next morning, at which point the defendant told the officers, "You got me," and, "I'm not gonna give you any trouble."

On August 16, 2013, in a substitute information, the defendant was charged with murder in violation of § 53a-54a (a),[3] and carrying a pistol without a permit in violation of § 29-35 (a).[4] At his jury trial, the defendant admitted that he had shot the victim, loaded him onto the back of his Hummer, thrown the gun into a river, and concealed the victim's body in his grandmother's backyard, but repeatedly testified that he had shot the victim in self-defense. Neither the state nor the defendant requested a jury instruction on any lesser

included offense.

The defendant offered two theories of defense: (1) that he had acted in self-defense and (2) that he had not intended to kill the victim, but that he had acted with the requisite mental state for the crime of manslaughter in the first degree.[5] According to the defendant, the shooting arose out of an altercation he had with the victim concerning money. In the defendant's version of events, the victim attacked him and tried to grab his gun, which fell to the ground. At this point, the defendant was on the ground as the victim kicked him. The defendant reached for the gun and shot at the victim, who proceeded to run away across the street. It was not until the victim was across the street that the defendant noticed that the victim was shot. Thus, according to the defendant, he did not intend to kill the victim and his conduct constituted self-defense.

Defense counsel began his closing argument by arguing that the defendant did not have the requisite intent to kill the victim, but rather acted with the requisite mental state for the crime of manslaughter, recklessness: "If two of us get in an altercation and we're friends and we wrestle or tussle, and there is a gun involved and someone gets shot, it's a manslaughter. The intent isn't to kill your friend, but you're in a fight. If I wait for you outside and you come around the corner, and I am waiting for you and I shoot you, it's a murder. . . . And therein lies the issue in this case because he is not charged with manslaughter; he is charged with murder. So, the only issue, the narrow issue, that you have to figure out is what his intent was." Defense counsel argued that the defendant "didn't intend to kill [the victim]. He intended to get him off of him."

Later in his closing argument, defense counsel sought to explain to the jury the elements of murder, self-defense, and manslaughter in the first degree by reckless indifference, and to supplement his explanation with a visual presentation listing the elements, as codified by statute, via an overhead monitor. Defense counsel argued to the jury: "I typically during closing argument don't go [into] the law with specificity, but I think in this case it is somewhat important. It will be brief and I'll go through it quickly, and Her Honor will actually direct you on what [that] is. And Her Honor's interpretation and statement of law is what governs this trial, but at the same time I want everyone to understand exactly what it is the state has to prove beyond a reasonable doubt. The first thing—the first count that you are going to consider is the murder count. And what I have done is, I have basically taken what the murder count is. And I'll read it to you because I know from there you really can't see with the overhead [monitor].

\* \* \*

"Now, when we start talking about self-defense, and you have that claim, and you'll have to determine whether or not he used—he was justified in using the force that he used. . . . And like I said, this thing [on the overhead monitor] was just taken straight from the judge's charge. . . .

"And the last thing I'll read to you because I actually think that it's true during this process, is the manslaughter in the first degree with a firearm. With intent to cause serious physical—"

At this point in the proceedings, the state objected, and the court sustained the objection, although no basis for the objection was stated. Defense counsel did not ask to be heard with respect to the objection or request that the court clarify the scope of its ruling. Rather, he proceeded with his closing argument:[6] "As I said, manslaughter is something that happens when two people get in an argument, in a fight, a gun is drawn, and someone gets hurt—and friends get hurt, and that is what this case is.

\* \* \*

"[T]here's a reasonable doubt and a reasonable hypothesis between what happened between [the victim and the defendant]. It is reasonable to think they got into an argument and he was shot because he got into an argument. That makes it a manslaughter. Your problem is going to be that you can't find him guilty of manslaughter because the state chose not to charge him, so you're stuck. The state chose not to add lesser includeds, and the state chose not to give you the option of what he is actually guilty of. So, you have to make the tough decision to find him not guilty because you can't find what his intent is."

In response, the state argued in its rebuttal closing argument that the defendant chased the victim and shot him from behind, and, thus, intended to kill the victim: "First of all, it's murder; it's not manslaughter. . . . What counsel just told is, my guy is guilty, but what the state charged with was wrong. He didn't intend to kill him. But if you believe that he intended to kill him, we're claiming self-defense. Does that make sense?[7] It's manslaughter, but if you don't find it is manslaughter, then here is a defense I can use—it's self-defense . . . .

"The state proved murder, not manslaughter. He intended to kill him. That is what the intent is of firing a .45 caliber handgun at somebody. Your intent was not to warn him." (Footnote added.)

After closing argument, the court elaborated on its ruling outside the presence of the jury: "There was only one objection during the defense's argument, and that was to a—so, there is a record of it. Counsel put up on the screen a slide with the elements of the offense of manslaughter in the first degree by reckless indiffer-

ence. I sustained the objection. That is not appropriate.

"In this case neither side requested a lesser included offense charge. Typically, those requests come from the defense and not the state, and the defense didn't request it. It would be confusing to the jury and completely inappropriate to instruct them on the elements of an offense which has not been charged. And so those are the reasons why I sustained the objection on that ground.

"Now, I understand the defense may not have wanted a lesser included and to give the jury that option, and that is your call, strategically. But you can't be instructing them about something that is not part of this case and has not been charged or an element of this offense. So, for those reasons, I sustain the objection." The defendant did not take further action with respect to the court's ruling or seek to have the slide that listed the elements of manslaughter marked for identification.

Following the court's elaboration, the jury began deliberating, and on August 23, 2013, found the defendant guilty of both counts. The defendant subsequently pleaded guilty to criminal possession of a firearm in violation of § 53a-217 (a). On February 18, 2014, the court imposed a total effective sentence of sixty years of incarceration. This appeal followed.

The defendant claims on appeal that the court violated his sixth amendment right to present a defense by precluding defense counsel during closing argument from delineating the elements of the lesser included offense of manslaughter in the first degree with a firearm. Although the defendant concedes that he did not preserve this claim properly at trial, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Specifically, he argues that his claim satisfies the first prong of *Golding* because, although he did not have the slide marked for identification, the court described the contents of the slide on the record. He also argues that his claim satisfies the second and third prongs of *Golding* because the court violated his sixth amendment right to argue to the jury that the state had not satisfied its burden of proving beyond a reasonable doubt an essential element of the offense, namely, that he intended to cause the death of the victim. Finally, he argues that the state cannot prove beyond a reasonable doubt that this error was harmless.

The state responds that the defendant's claim is not entitled to review under *Golding* because the defendant's claim is not constitutional in nature and, therefore, fails under the second prong of *Golding*. The state contends that the claim is not of a constitutional magnitude because it arises out of the common-law doctrine

regarding lesser included offenses. Even if this claim satisfies the second prong of *Golding*, the state argues that the defendant has failed to establish that his sixth amendment right to present a defense was violated because he was not precluded from making the argument that he did not have the requisite intent to commit murder, but rather had the requisite intent to commit manslaughter. Last, the state argues that any error was harmless beyond a reasonable doubt. We agree with the state that the defendant's claim fails under the third prong of *Golding*.

"As we recently have noted, [u]nder *Golding* review . . . a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Polanco*, 165 Conn. App. 563, 572, 140 A.3d 230, cert, denied, 322 Conn. 906, 139 A.3d 708 (2016). "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). "Because a defendant cannot prevail under *Golding* unless he meets each of those four conditions, an appellate court is free to reject a defendant's unpreserved claim upon determining that any one of those conditions has not been satisfied." *State* v. *Brunetti*, 279 Conn. 39, 54, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

The defendant first argues that the record is adequate for review because the court stated on the record the basis for its ruling and described the content of the excluded slide as having listed the elements of manslaughter in the first degree. Although the defendant failed to have the slide marked for identification purposes, the state concedes that the record is adequate for review of this claim because the court described its content on the record. We agree with both parties.

Although "[i]t is incumbent upon the [defendant] to take the necessary steps to sustain [his] burden of providing an adequate record for appellate review"; (internal quotation marks omitted) id., 63; the record independently may be adequate to establish the substance of an excluded exhibit if its content is stated on the record. See *Filippelli* v. *Saint Mary's Hospital*, 319 Conn. 113, 151, 124 A.3d 501 (2015). Thus, in the present

case, to the extent that the defendant's claim requires this court to consider the contents of the slide, the record is adequate for review because the trial court described its content on the record.

Although the state concedes that the record is adequate for review, the state, nevertheless, contends that the defendant's claim is not reviewable because it is not of a constitutional nature, and, thus, fails under the second prong of *Golding.* Specifically, the state contends that the defendant's claim implicates his common-law right to a jury instruction on a lesser included offense.[8] According to the state, to be entitled to a jury instruction on a lesser included offense, the party seeking the instruction must satisfy the four-pronged test established in *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980),[9] and because the defendant did not satisfy these four prongs, he could not argue the elements of manslaughter, which is a lesser included offense of murder, to the jury in his closing argument.

The state misinterprets the defendant's claim. The defendant's claim does not implicate his common-law right to a jury instruction on a lesser included offense because he did not ask for one. Rather, the defendant argues that the court violated his sixth amendment right to argue that the state had failed to satisfy its burden to prove an essential element of the crime charged beyond a reasonable doubt, namely, that he had the requisite intent to kill the victim. The defendant contends that the prohibited argument bore directly on his theory of the defense. Such a claim is constitutional in nature.

The sixth amendment, which is applicable to the states through the fourteenth amendment, guarantees to the accused in all criminal prosecutions the right to the assistance of counsel, which includes the opportunity to participate fully and fairly in the adversary process. *Herring* v. *New York*, 422 U.S. 853, 856–58, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975). "The opportunity for the defense to make a closing argument in a criminal trial has been held to be a basic element of the adversary process and, therefore, constitutionally protected under the sixth and fourteenth amendments. . . . Closing argument is an integral part of any criminal trial, for it is in this phase that the issues are sharpened and clarified for the jury and each party may present his theory of the case. Only then can [counsel] . . . argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt. . . .

"The right to present a closing argument is abridged not only when a defendant is completely denied an opportunity to argue before the court or the jury after all the evidence has been admitted, but also when a

defendant is deprived of the opportunity to raise a significant issue that is reasonably inferable from the facts in evidence. This is particularly so [if] . . . the prohibited argument bears directly on the defendant's theory of the defense." (Citations omitted; internal quotation marks omitted.) *State* v. *Arline*, 223 Conn. 52, 63–64, 612 A.2d 755 (1992).

In the present case, the defendant claims that by prohibiting him from listing the elements of manslaughter in the first degree, the court deprived him of the opportunity to raise a significant issue bearing directly on his theory of defense, which was that he did not have the requisite intent to commit murder because he had the requisite intent to commit manslaughter. The state is correct that a defendant has no constitutional right to a jury instruction on a lesser included offense. There is, however, no Connecticut precedent that precludes a defendant from referring to a lesser included offense, on which the jury is not instructed, during closing argument as a means by which to undermine an element of the charged offense.[10] Although this claim involves the elements of a lesser included offense, it does not implicate the defendant's common-law right to a jury instruction on a lesser included offense, but rather implicates his sixth amendment right to argue during closing argument that the state had failed to prove beyond a reasonable doubt an element of the charged crime. Accordingly, the defendant's claim is of a constitutional magnitude, and, thus, satisfies the second prong of *Golding*.

Although we agree with the defendant that his claim satisfies the second prong of *Golding*, we do not agree that the court violated his sixth amendment right to present a closing argument, and, therefore, the defendant's claim fails under the third prong of *Golding*. In support of his claim, the defendant argues that his right to present a closing argument was violated because, by precluding him from listing the elements of manslaughter in the first degree, the court prohibited him from arguing a significant issue that bore directly on his theory of defense, which was that he did not possess the requisite intent for murder because he had the requisite intent for manslaughter. The state counters that, although he was precluded from listing the elements of manslaughter, the defendant was allowed to argue his theory of defense—that he did not intend to kill the victim, but rather that he recklessly killed the victim and, thus, may have committed manslaughter. We agree with the state.

We review the limits that the trial court imposes on a defendant's closing argument for an abuse of discretion. "The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He may limit counsel to a reasonable time and may terminate argument when continua-

tion would be repetitive or redundant. He may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial." *Herring* v. *New York*, supra, 422 U.S. 862. "It is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, to prevent the jury from considering matters in the realm of speculation and to prevent the jury from being influenced by improper matter that might prejudice its deliberations." (Internal quotation marks omitted.) *State* v. *Joyce*, 243 Conn. 282, 305–306, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998). Additionally, a trial court retains the discretion to prevent the presentation to the jury of a matter that poses an undue risk of confusing the jury. See *Crane* v. *Kentucky*, 476 U.S. 683, 689–90, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) ("judges . . . [have] wide latitude to exclude evidence that is [repetitive . . . only] marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues" [internal quotation marks omitted]).

"[Although] we are sensitive to the discretion of the trial court in limiting argument to the actual issues of the case, tight control over argument is undesirable when counsel is precluded from raising a significant issue." (Internal quotation marks omitted.) *State* v. *Joyce*, supra, 243 Conn. 306. "The right to present a closing argument is abridged . . . [if] a defendant is deprived of the opportunity to raise a significant issue that . . . bears directly on the defendant's theory of the defense." *State* v. *Arline*, supra, 223 Conn. 64.

To the extent that a court's ruling concerning the restrictions imposed on a defendant's closing argument is ambiguous, the defendant bears the burden of obtaining clarification. See *State* v. *Ricardo R.*, 305 Conn. 581, 594, 46 A.3d 139 (2012) ("[i]f defense counsel believed that the trial court's ruling [concerning the scope of the limits placed on defense counsel's questioning on a certain subject] was unclear, it was defense counsel's obligation to seek further clarification" [internal quotation marks omitted]).

In the present case, the defendant argues that he was precluded from arguing his theory of defense, that theory being that he recklessly killed the victim, because the court prohibited defense counsel from delineating and arguing the elements of manslaughter, and without a listing of the elements of manslaughter, the jury could not have understood the difference between murder and manslaughter. The defendant concedes, however, that the court's ruling permitted defense counsel to argue that he did not have the specific intent to murder and to present a definition of manslaughter, but alleges that his definition of manslaughter was not adequate without listing all of the

elements of manslaughter.

The court's elaboration on its ruling establishes that it precluded the defendant from showing the slide listing the elements of manslaughter and from delineating to the jury, either through the slide or orally, all of the elements of manslaughter. Concerning the slide, the court explained: "[Defense] [c]ounsel put up on the screen a slide with the elements of the offense of manslaughter in the first degree by reckless indifference. I sustained the objection. That is not appropriate." Concerning listing the elements of manslaughter generally, by slide or orally, the court explained: "It would be confusing to the jury and completely inappropriate to instruct them on the elements of an offense which has not been charged. . . . [Y]ou can't be instructing them about something that is not part of this case and has not been charged . . . ."

On the basis of the court's elaboration, it is clear that the court did not preclude defense counsel from arguing that the defendant lacked the requisite intent to commit murder because he may have had the requisite intent to commit manslaughter. The court merely precluded defense counsel from listing all of the elements of manslaughter in the first degree. Defense counsel was permitted to argue, and did argue, that the defendant did not intend to kill the victim, but rather had a different mental state, and, thus, did not commit the crime of murder. Specifically, following the court's sustaining the prosecutor's objection, defense counsel used the term "manslaughter" without objection three times. Defense counsel argued that the defendant's actions, such as shooting the victim in the shoulder, were proof that he did not intend to kill the victim. Additionally, he argued that absent the requisite intent to kill the victim, the defendant committed manslaughter, and, thus, could not be found guilty of murder.

Furthermore, at the beginning of defense counsel's closing argument, without objection, he argued that the defendant did not intend to kill the victim, but rather, at most, may have committed manslaughter. Specifically, defense counsel argued: "If two of us get in an altercation and we're friends and we wrestle or tussle, and there is a gun involved and someone gets shot, it's a manslaughter." From this argument, the jury reasonably could have concluded that, although the defendant shot the victim, he did not do so with the intent to kill him.

On the basis of the arguments that defense counsel made during closing argument, despite the court's ruling, defense counsel was able to argue, or had a fair opportunity to argue, his theory of defense, which was that the defendant did not have the requisite intent to commit murder because he recklessly killed the victim and, thus, may have committed a different crime, manslaughter. Defense counsel may have been precluded from making this argument in the precise fashion that

he wished by delineating all of the elements of manslaughter, but such a limitation was within the court's sound discretion. Despite this limitation, defense counsel was permitted to argue, and did argue or had a fair opportunity to argue, his theory of defense to the jury.[11]

We fully are aware that the court's explanation for its ruling was not stated until after the conclusion of closing arguments. Nevertheless, to the extent that defense counsel was confused as to whether the court's ruling precluded him from arguing that the defendant had the requisite mental state to commit manslaughter, not murder, it was his duty to seek clarification from the court regarding the precise nature of its ruling and any limitations placed on him regarding the scope of closing argument. See *State* v. *Ricardo R.*, supra, 305 Conn. 594. Additionally, on the basis of our review of both parties' arguments following the court's ruling, neither party appeared to believe that the court's ruling prevented them from addressing the topics of intent and manslaughter, as both parties did in fact make such arguments.[12] Thus, although the court explained its ruling after the conclusion of closing arguments, we can infer from both parties' subsequent arguments that they understood the court's ruling to mean, as it later clarified, that the parties could not list, orally or by slide, the elements of manslaughter in the first degree.[13]

In sum, although the court precluded the defendant from listing, orally or by projecting on a slide, all of the elements of manslaughter in the first degree, the defendant was not deprived of the opportunity to raise a significant issue that bore directly on his theory of defense. Rather, defense counsel was allowed to present, and had a fair opportunity to present, his theory of defense, which was that the defendant lacked the requisite mental state for the crime of murder because he did not intend to kill the victim when he shot him. Accordingly, we conclude that the trial court did not abuse its discretion by precluding the defendant during his closing argument from listing for the jury, orally or by slide, all of the elements of manslaughter in the first degree. Therefore, a constitutional violation does not exist, and the defendant's claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On appeal, the defendant does not raise any claims that challenge his conviction of carrying a pistol without a permit in violation of § 29-35 and criminal possession of a firearm in violation of § 53a-217 (a).

[2] The murder weapon was never recovered.

[3] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

[4] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

[5] The elements of manslaughter in the first degree by reckless indifference are set forth in General Statutes § 53a-55 (a), which provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[6] The state did not object to any other further reference to manslaughter by counsel for the defendant during the remainder of the argument.

[7] We note that contrary to the state's contention, these two theories are not necessarily inconsistent with each other. The defense of self-defense may be used as a defense to the charge of murder and to the charge of manslaughter in the first degree. *State* v. *King*, 24 Conn. App. 586, 590–91, 590 A.2d 490 (self-defense is valid defense to manslaughter in first degree), cert. denied, 219 Conn. 912, 593 A.2d 136 (1991).

[8] There is no constitutional requirement that a trial court instruct the jury on a lesser included offense. *State* v. *Ortiz*, 217 Conn. 648, 659, 588 A.2d 127 (1991) ("a lesser included offense instruction is purely a matter of common law, and therefore does not implicate constitutional rights").

[9] "A [party] is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant*, supra, 179 Conn. 588.

[10] Other states hold that a defendant may refer to a lesser included offense or a lesser related offense, with which the defendant is not charged and the jury not instructed, during closing arguments as part of the defendant's theory of defense. See, e.g., *People* v. *Valentine*, 143 Cal. App. 4th 1383, 1388, 49 Cal. Rptr. 3d 948 (2006) (although defendant was not entitled to jury instruction on lesser included offense, he could "argue to the jury [during closing argument] that his culpability was as one who was in possession of stolen property but not one who committed a robbery"), review denied, 2007 Cal. LEXIS 617 (Cal. January 24, 2007). We need not decide whether a court may preclude any and all reference to an uncharged lesser included offense, because we conclude, in this case, that the court did not preclude the defendant from arguing his theory of defense that he did not have the requisite intent to commit murder, but may have had the requisite intent to commit manslaughter.

[11] At oral argument before this court, the defendant also argued that his sixth amendment right to present a closing argument was violated because this right includes the right to an unimpeded, uninterrupted closing argument. Although the state's objection momentarily interrupted the natural flow of defense counsel's summation, such an interruption did not prevent defense counsel from presenting a closing argument or arguing his theory of defense. Additionally, we note that the defendant cites to no law in support of his contention that his sixth amendment right to present a closing argument encompasses the right to an uninterrupted closing argument. Rather, parties are obligated to object to closing arguments that they deem improper. See *State* v. *Francione*, 136 Conn. App. 302, 316, 46 A.3d 219 (if defendant believes that prosecutor's closing argument is improper, defendant should object to improper argument during closing argument), cert. denied, 306 Conn. 903, 52 A.3d 730 (2012). Just as a defendant may object to a prosecutor's improper closing argument, a prosecutor likewise may object to an improper closing argument by the defendant. Accordingly, the interruption caused by the prosecutor's objection during defense counsel's closing argument did not violate the defendant's sixth amendment right to present a closing argument.

[12] We note that, contrary to the defendant's contention, the prosecutor did not list the specific elements of manslaughter in the first degree during his rebuttal closing argument, and, thus, the state was not permitted to make the argument that the defendant was precluded from making.

[13] Moreover, we note that the defendant in his brief on appeal does not contend that defense counsel was confused as to the scope and meaning of the court's ruling. The only argument that the defendant alleges that he was precluded from making was listing all of the elements of manslaughter

in the first degree.

---