******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* WILLIAM MCKINNEY
## (AC 43611)

Bright, C. J., and Alvord and Harper, Js.

*Syllabus*

The defendant appealed to this court from the judgments of the trial court rendered in accordance with the jury's verdict of guilty of the crime of assault of an elderly person in the second degree and the court's finding that the defendant had violated his probation. The defendant was involved in a verbal disagreement with the victim during which he punched the victim repeatedly, which resulted in serious injuries to the victim. The defendant raised a claim of self-defense in which he asserted that he suffered injuries when the victim attacked him first with a sock that had a rock inside it. At the time of the incident with the victim, the defendant was serving a probationary sentence as a result of a previous conviction. Prior to trial, the court denied a motion he filed to correct an illegal sentence in which he challenged the validity of the prior conviction. The defendant thereafter appealed to this court from that denial but subsequently withdrew the appeal. At the sentencing proceeding on the defendant's assault conviction, the trial court declined to consider a second motion the defendant filed to correct the sentence imposed on the prior conviction. *Held*:

1. This court declined to review the merits of the defendant's claim that the prior trial court abused its discretion in denying his first motion to correct an illegal sentence, the defendant having waived any claims relating to that motion when he withdrew his appeal challenging its denial; there was no merit to the defendant's assertion, which contravened the well established law of waiver, that his filing of the second motion to correct an illegal sentence negated the withdrawal of the prior appeal and, thus, allowed him to renew his challenge to the prior trial court's denial of his first motion to correct an illegal sentence.

2. The defendant's claim that the trial court erred in certain of its evidentiary rulings was unavailing:

   a. The defendant's assertion that the trial court erred in excluding relevant testimony from a police detective as to whether a sock with a rock inside it was a weapon was rendered unreviewable as a result of the defendant's failure to make an offer of proof at trial; because the defendant gave no explanation as to why the evidence was relevant, the trial court did not know the specific theory that supported the admission or nature of the proposed evidence, and, thus, this court could not determine whether the trial court's ruling was harmful, as an assessment of the defendant's claim would require a record that reflects the substance of the detective's expected testimony.

   b. The trial court did not abuse its discretion in determining that a physician's testimony about an incident more than six years earlier in which a police officer allegedly hit the defendant with a baton was relevant: notwithstanding the state's contention that the defendant's claim was unpreserved for appellate review because he raised a theory of relevancy on appeal that he did not argue at trial, which was that the physician was not the appropriate witness to testify because he had no knowledge of the prior incident, the defendant's attempt to assert a new argument that was premised on a different perspective of the evidence did not render his claim unpreserved, as this court was limited to assessing the relevancy of the testimony exclusively within the confines of the defendant's arguments at trial; moreover, because the defendant raised the defense of self-defense, it was relevant for the state to present evidence that would allow the jury to infer that the injuries from which he allegedly suffered were not the result of an attack by the victim but, rather, were caused when he previously was hit with the baton, which was a material issue of fact for the jury's consideration in evaluating whether the defendant's use of physical force against the victim was justified under the circumstances.

   c. The defendant could not prevail on his unpreserved claim that the trial court improperly struck certain of his counsel's statements during

closing argument to the jury and thereby violated his sixth amendment right to the effective assistance of counsel because those statements were essential to his self-defense claim: although the record was adequate for review and the claim was of constitutional magnitude, the defendant failed to demonstrate that the alleged constitutional violation existed, as the inference counsel sought to draw, which was that the victim attacked at least one other person with the sock that had a rock in it, was unreasonable and not based on facts in evidence, as was counsel's statement that the evidence supported the inference that the defendant probably had been struck by the sock with the rock in it; moreover, even though only certain DNA evidence could possibly have supported a conclusion that the sock with a rock in it was used to hit someone other than the defendant, no facts were adduced at trial to indicate how or when such an incident could have occurred, there was no evidence to support a conclusion that the DNA on the sock was the result of an attack, and, thus, counsel's argument required expansive speculation as to facts not in evidence to permit a conclusion that the victim used the sock with the rock in it to attack a third party; accordingly, the defendant's right to present a closing argument was not abridged.

Argued October 4—officially released December 21, 2021

*Procedural History*

Two substitute informations charging the defendant, in the first case, with the crimes of assault of an elderly person in the first degree and assault of an elderly person in the second degree, and, in the second case, with violation of probation, brought to the Superior Court in the judicial district of New Haven, where the first case was tried to the jury before *B. Fischer, J.*, and the second case was tried to the court; verdict and judgment of guilty of assault of an elderly person in the second degree and judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed.*

*Raymond L. Durelli*, assigned counsel, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Sean P. McGuinness*, assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, William McKinney,[1] appeals from the judgment of conviction, rendered after a jury trial, of one count of assault of an elderly person in the second degree in violation of General Statutes § 53a-60b (a) (1).[2] The defendant also appeals from the court's judgment finding him in violation of his probation pursuant to General Statutes § 53a-32. The defendant claims that the court erred in (1) denying his first motion to correct an illegal sentence that he filed and (2) its rulings on several evidentiary objections during trial. We affirm the judgments of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to the defendant's appeal. At about 11 p.m. on July 13, 2017, on the New Haven Green (Green), about fifty yards in from the street, near a fountain in the middle of the lower Green, the defendant became involved in a verbal disagreement with the victim.[3] The argument quickly became physical, and the victim fell to the ground. Although the victim was on the ground, the defendant did not walk away. Instead, the defendant straddled the victim and punched him repeatedly in the head and face. The defendant hit the victim "well over ten times." Each punch made a "wet, slapping sound." The victim soon became motionless. After a few minutes, the defendant stood up and walked away.

The defendant walked away from the scene along Chapel Street, where New Haven Police Officer John Moore stopped him because he matched the description of someone involved in an assault on the Green. Although the defendant was not hostile toward Moore, he was visibly irate. The defendant had blood on his hands and forearms. When asked if he had been in a fight, the defendant told Moore, "I fucked that guy up." The defendant claimed that he had cut his hand, had been hit in the head, and may have broken a knuckle. The officer requested an ambulance. Once the ambulance arrived, an emergency medical technician (EMT) cleaned the victim's blood off the defendant's hands and checked him for injuries.[4]

The defendant then told Moore his version of what happened:[5] He was waiting at the bus stop on Temple Street, near the Green, when the victim attacked him with what the defendant thought was a blackjack but later claimed was a rock inside of a sock. The two men began to fight and shortly thereafter the victim slipped, allowing the defendant to get the upper hand. The defendant then got on top of the victim and punched him "over fifty times." When informed that the victim was in serious condition, the defendant said, "good, I hope that motherfucker dies." The defendant then was taken to the police station for questioning.

Earlier, during the confrontation, two passersby

observed the defendant repeatedly punching the victim while he lay on the ground, and the passersby stopped to call the police.[6] By the time they called 911, the defendant had begun to walk away. The passersby observed that the victim's breathing was labored, he was not moving, he had blood on his face, and his "skull was crushed in."

New Haven Police Officer Daophet Sangxayarath was the first to arrive at the scene. He saw the victim, later identified as Robert Haynes, aged sixty-two, lying face down on the ground, bleeding from the head. Shortly thereafter, New Haven Police Officers Evan Kelly and Nicole Motzer arrived at the scene. Kelly, who previously was an EMT, tended to the victim. The victim was semiconscious and unable to follow any commands. He had bruising along the right side of his head from his forehead down to his cheekbone, his right eye was swollen shut, and there were abrasions on his face. Concerned about the victim's breathing, Kelly turned him onto his back. In doing so, he discovered "a sock with some kind of blunt object inside" (the sock with a rock inside it) beneath the victim and handed the item to Sangxayarath.[7] An ambulance arrived soon after and transported the victim to Yale-New Haven Hospital. The victim was treated for, inter alia, a life-threatening skull fracture likely caused by blunt force trauma.

The victim remained hospitalized for three months, after which he was transferred to a rehabilitation facility where he remained for at least twenty-two months. The victim was unable to communicate verbally until about three months after the incident. Since the altercation, he has been unable to walk, has lost sight in his right eye, has had difficulty using his hands, and has an indentation in his head.

The defendant ultimately was charged, by way of a two count information, with assault of an elderly person in the first degree in violation of General Statutes § 53a-59a (a) (1)[8] and assault of an elderly person in the second degree in violation of § 53a-60b (a) (1) (2017 assault charges). At the time of the assault, the defendant was serving a probationary sentence imposed as a result of a 2012 conviction. In April, 2012, the defendant had pleaded guilty to robbery in the second degree in violation of General Statutes (Rev. to 2011) § 53a-135 and larceny in the sixth degree in violation of General Statutes § 53a-125b,[9] and was sentenced to eight years of incarceration, execution suspended after thirty-six months, and three years of probation (2012 sentence). Thus, as a consequence of his arrest on the 2017 assault charges, the defendant was charged in a separate docket with violation of probation.

During the pretrial proceedings, on July 30, 2018, the defendant filed a motion to correct an illegal sentence (first motion to correct), arguing that his 2012 sentence was illegal, and requesting "an order reopening the judgment of conviction and vacating his plea to the charges

therein, and scheduling the case for trial." The court, *Clifford, J.*, denied the motion. The defendant appealed the ruling but withdrew the appeal before any briefs were filed.

On May 31, 2019, evidence was presented at a hearing on the probation violation charge. At the conclusion of the hearing, the court stated that it would "wait to hear on the jury on the underlying information" before issuing a decision on the probation violation. A jury trial on the assault charges was held over the course of four days in May and June, 2019. On June 4, 2019, the jury found the defendant not guilty of assault of an elderly person in the first degree in violation of § 53a-59 (a) (3) and guilty of assault of an elderly person in the second degree in violation of § 53a-60b (a) (1). On the same day, after accepting the verdict, the court determined that the defendant had violated the terms of his probation in violation of § 53a-32 "by committing an assault against [the victim] on July 13, 2017."

A sentencing hearing was held on August 28, 2019. At the start of the hearing, the court noted that the defendant had filed a second motion to correct an illegal sentence[10] in July, 2019 (second motion to correct).[11] Although the defendant filed the motion while acting in a self-represented capacity, he was represented by counsel at the hearing.[12] The court, *B. Fischer, J.*, did not consider the second motion to correct, regarding the 2012 sentence, noting "[i]t's not in front of this [c]ourt. So . . . I'm not taking any action on it." The defendant was then sentenced to five years of incarceration for the assault and five years of incarceration for the violation of probation, to run consecutively. This appeal followed.

I

The defendant's first claim on appeal is that the court abused its discretion in denying his first motion to correct an illegal sentence. For the following reasons, we decline to reach the merits of this argument.

The following procedural history is relevant to our resolution of this claim. On July 30, 2018, the defendant filed his first motion to correct an illegal sentence and requested that the court open the 2012 judgment of conviction, vacate his pleas, and schedule the case for trial.[13] On October 9, 2018, Judge Clifford heard oral argument on the first motion to correct. At the hearing, the defendant argued that the 2012 sentence was illegal because the plea agreement on which his guilty plea was based had been violated.[14] After lengthy discussion, Judge Clifford, in an oral ruling, determined that the plea agreement was not violated and, therefore, denied the defendant's first motion to correct.[15] On March 13, 2019, the defendant appealed to this court from Judge Clifford's denial of the motion to correct. On August 13, 2019, however, before any briefs were filed, the

defendant withdrew the appeal.

After trial on the 2017 assault charges and prior to sentencing, on August 2, 2019, the defendant, acting in a self-represented capacity, filed his second motion to correct, arguing that the 2012 sentence was "ambiguous and contradictory." On August 28, 2019, prior to sentencing, Judge Fischer, who had presided over the trial, addressed the defendant's motion. Following arguments from each side, wherein the defendant was again represented by counsel, Judge Fischer stated: "I'm not going to take any action on the motion to correct [an] illegal sentence. He has remedies on that. It's not in front of this court. . . . I'm not taking any action on it."

On appeal, the defendant claims that the court erred in denying his first motion to correct an illegal sentence because his 2012 sentence was both ambiguous and contradictory. He contends that the case should be remanded for the trial court to correct the illegal sentence and vacate his sentence for violation of probation.

The state, however, asserts, inter alia, that this claim is not reviewable because "(1) the defendant abandoned any claim with respect to Judge Clifford's denial of his [first] motion to correct an illegal sentence when he withdrew his appeal of that decision, and (2) Judge Fischer never issued a ruling on the matter."

The defendant responds that "[t]he state's argument minimizes the fact that the defendant renewed the motion to correct before Judge Fischer. Although Judge Fischer did not make a ruling on that motion, he most certainly let Judge Clifford's ruling stand and sentenced the defendant to five years to serve on the violation of probation . . . predicated on the 2012 sentence. These facts make Judge Clifford's ruling an intricate component of this appeal." We agree with the state that the defendant waived this claim when he withdrew his appeal of Judge Clifford's ruling on the first motion to correct.

At the outset, it is important that we determine the subject of the defendant's appeal as it relates to this claim. The defendant's principal brief is devoid of any reference to his second motion to correct and to Judge Fischer's treatment of it. Although the defendant indicated on his appeal form that the appeal pertains to Judge Fischer, the defendant identified the action that constitutes the appealable judgment as: "Judgment of Convictions C.G.S. Sec. 53a-60b, 53a-32." He did not identify any judicial action with respect to either of his motions to correct. The defendant begins his analysis by noting that the "trial court was correct in concluding it had jurisdiction to consider the merits of the defendant's motion." Importantly, the issue of jurisdiction was considered by Judge Clifford and not Judge Fischer. Additionally, the defendant notes that the "trial court recognized the ambiguity in the sentencing agree-

ment: 'Right, but that's where you're mixing it up. Your issue was, you weren't able to set up another residency.' " Again, it was Judge Clifford who "recognized the ambiguity," not Judge Fischer.

Further, the defendant includes copies of his first motion to correct an illegal sentence and Judge Clifford's ruling on that motion in his appendix but does not include a copy of the second motion to correct. The defendant's principal brief to this court reads only as an appeal of Judge Clifford's denial of the first motion to correct—a claim he has waived. The defendant first mentions the second motion to correct in his reply brief, only to argue that the second motion to correct constituted a renewal of the first motion to correct.[16] Similarly, during oral argument before this court, the defendant's appellate counsel referred to the second motion to correct as renewing the first motion and contended that Judge Fischer "let Judge Clifford's ruling stand," allowing the defendant to again appeal from Judge Clifford's ruling. Counsel's position further supports the conclusion that the defendant is appealing only from Judge Clifford's denial of the first motion to correct. Finally, if the defendant were appealing from Judge Fischer's ruling, he would be claiming that it was error for Judge Fischer to decide that the issue was "not in front of this court"; this was not his claim.[17] Thus, the defendant is undoubtedly appealing from Judge Clifford's denial of his first motion to correct.

"It is well established that when a party brings a subsequent appeal, it cannot raise questions which were or could have been answered in its former appeals. . . . Failure to raise an issue in an initial appeal to this court constitutes a waiver of the right to bring the claim." (Internal quotation marks omitted.) *Disciplinary Counsel* v. *Evans*, 159 Conn. App. 343, 356, 123 A.3d 69 (2015). "Waiver is an intentional relinquishment or abandonment of a known right or privilege." (Internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 80 Conn. App. 436, 445, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004). "It is axiomatic, however, that this principle applies only when the issue that a party seeks to raise in a subsequent appeal was one that the party actually litigated *prior to the initial appeal* such that the issue *could have been raised in the initial appeal*." (Emphasis in original; internal quotation marks omitted.) *Disciplinary Counsel* v. *Evans*, supra, 356. "Failure to follow this rule would lead to the bizarre result . . . that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." (Citation omitted; internal quotation marks omitted.) *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 306 Conn. 304, 319–20, 50 A.3d 841, cert. denied, 569 U.S. 918, 133 S. Ct. 1809, 185 L. Ed. 2d 812 (2012).

For example, in *Evans*, the defendant appealed from the trial court's order suspending him from the practice of law, but that appeal was dismissed because he failed to file a preliminary statement of issues, as required by Practice Book § 63-4 (a) (1). See *Disciplinary Counsel* v. *Evans*, supra, 159 Conn. App. 355–56. The defendant later appealed the court's order denying his motion for reinstatement and raised several claims that were also raised in the first appeal. Id., 353, 355. Due to the fact that the defendant had already raised the same claims in the first appeal, this court determined that the claims were waived and declined to review them. Id., 356–57.

Likewise, in the present case, the defendant waived his claim regarding his first motion to correct when he withdrew his appeal challenging Judge Clifford's ruling on that first motion. His claims as to that ruling could have been addressed in that appeal. See id. The defendant cannot now revive that earlier claim, as he has waived it.

In an attempt to obscure the fatality of this defect, the defendant raised a new argument in his reply brief and during oral argument before this court. Without providing any legal support, the defendant contended that, because Judge Fischer declined to rule on his second motion to correct, Judge Fischer had "let Judge Clifford's ruling stand," thereby resurrecting Judge Clifford's ruling on the first motion to correct while simultaneously creating an entirely new ruling on an entirely new motion to correct. Therefore, he asserts that, despite the fact that he waived his claims regarding the first motion to correct, he can argue in this appeal that Judge Clifford incorrectly denied his first motion to correct. The defendant's counsel conceded that, "if the defendant hadn't renewed the motion then the withdrawal of his appeal would have been an abandonment of that issue in this appeal." Yet, the defendant argues that the filing of the second motion to correct somehow renewed the first motion to correct and negated the withdrawal of the prior appeal, thereby allowing him to renew his challenge to Judge Clifford's determination. The defendant's argument is meritless, as it contravenes the well established law of waiver. See *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, supra, 306 Conn. 319; *Disciplinary Counsel* v. *Evans*, supra, 159 Conn. App. 356–57; *Gagne* v. *Vaccaro*, supra, 80 Conn. App. 445–46. Because he has waived any claims relating to the first motion to correct and cannot resurrect those claims through Judge Fischer's determination that the second motion to correct was not properly before him, we decline to review the merits of this claim.

II

The defendant also claims that the court erred as to three rulings made during the trial on the 2017 assault

charges. Specifically, the defendant claims that the court erred in (1) excluding testimony from the lead detective regarding his opinion as to whether a sock with a rock inside it is a weapon, (2) admitting testimony from a Department of Correction physician regarding an alleged 2011 incident in which the police hit the defendant in the head with a baton, and (3) striking certain statements defense counsel made regarding the victim during closing argument in violation of the defendant's constitutional right to present a defense.[18] We address each claim in turn.

A

The defendant first claims that the court erred in excluding testimony from Detective Matthew Collier as to his opinion as to whether a sock with a rock inside it is a weapon. Specifically, the defendant argues that, despite the court's ruling to the contrary, the testimony was relevant under § 4-1 of the Connecticut Code of Evidence.[19] The state contends that this claim is not reviewable because the defendant failed to make an offer of proof. We agree with the state.

The following additional facts are relevant to our resolution of this claim. At trial, the defendant did not deny that he hit the victim but asserted that he acted in self-defense. On May 30 and 31, 2019, the state presented the testimony of Collier, the lead detective on the case. Through Collier, the state presented video footage of the defendant's statement to the police immediately following his arrest on July 13, 2017. In the statement, the defendant asserted several times that the victim began the altercation when he hit the defendant in the head with a sock with a rock inside it.

On cross-examination, the following exchange occurred:

"[Defense Counsel]: Let me ask you this, detective. If that rock inside a sock had swung at someone's head, do you consider it a deadly weapon?

"[The Prosecutor]: Objection, Judge. It's irrelevant.

"The Court: Yeah. *How is that relevant there, Attorney Carty?* Are you claiming that?

"[Defense Counsel]: I'm claiming it, yes.

"The Court: All right. I'm going to—I'm going to sustain the objection. It's not relevant." (Emphasis added.) Defense counsel then proceeded with further questioning.

On appeal, the defendant now asserts that the court's ruling was erroneous. The state responds that, because "the relevance of any testimony that [Collier] may have given is not obvious based on the question" and because the defendant's claim is "based on speculation concerning how [Collier] *may* have replied to defense counsel's inquiries," the claim is not reviewable without an offer

of proof, which was not provided. (Emphasis in original.) In response, the defendant contends that the "[s]tate's [argument] misses the mark because (1) police officers, based on their training and experience, have been routinely permitted to provide opinions; and (2) the defendant was charged with assault and claimed he acted in self-defense; [t]wo of the elements of self-defense require the jurors to determine (a) whether the defendant used such degree of force that he reasonably believed necessary to defend himself; and (b) whether the defendant's actual belief about the degree of force necessary to defend himself was a reasonable belief. [General Statutes] § 53a-19 (a). Had Collier been permitted to respond to defense counsel's question it would have assisted the jurors in determining whether the defendant's belief was reasonable. Defense counsel's question was relevant and admissible and [went] directly to the core of his defense strategy that he acted in self-defense." Despite the fact that the defendant prefaces this argument by stating that it responds to the state's position, the defendant's assertions fail to do so. In fact, the defendant merely argues the merits of his claim to support his position that it is reviewable. For the following reasons, we conclude that the claim is not reviewable.

Although an offer of proof is not a strict prerequisite for appellate review; see *State* v. *Holley*, 327 Conn. 576, 595–96, 175 A.3d 514 (2018) ("[b]ecause [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)] does not excuse an inadequate record, the absence or inadequacy of an offer of proof *may* prevent a criminal defendant from proving on appeal that the trial court's preclusion of certain evidence violated his right to present a defense" (emphasis added; footnote omitted)); *Burns* v. *Hanson*, 249 Conn. 809, 824, 734 A.2d 964 (1999) (no offer of proof necessary because "[i]t [was] clear from the record what the [witness'] answer would have been"); in certain circumstances the failure to make an offer of proof renders a claim unreviewable on appeal. See, e.g., *State* v. *Gooch*, 186 Conn. 17, 24, 438 A.2d 867 (1982) (claim not reviewable without offer of proof because witness could have provided multiple answers, one of which being admissible and other not); *State* v. *Papineau*, 182 Conn. App. 756, 771–72, 190 A.3d 913 (failure to make offer of proof by asking court to hear witness' response outside presence of jury left record inadequate to review claim of evidentiary error), cert. denied, 330 Conn. 916, 193 A.3d 1212 (2018).

"[A] reviewing court may be unable to determine the propriety or effect of the excluded facts unless the substance of the proffered evidence is disclosed in the record. . . . Accordingly, [a]n offer of proof is the accepted procedure to preserve the record for appeal if evidence is excluded. . . . An offer of proof, properly

presented, serves three purposes. First, it should inform the court of the legal theory under which the offered evidence is admissible. Second, it should inform the trial judge of the specific nature of the offered evidence so the court can judge its admissibility. Third, it thereby creates a record adequate for appellate review. . . . Without an adequate record to review the ruling of the trial court, this court must assume that the trial court acted properly." (Citations omitted; internal quotation marks omitted.) *State* v. *Johnson*, 171 Conn. App. 328, 350–51, 157 A.3d 120, cert. denied, 325 Conn. 911, 158 A.3d 322 (2017).

As stated, in certain circumstances the failure to provide an offer of proof renders an evidentiary ruling unreviewable on appeal. For example, in *State* v. *Papineau*, supra, 182 Conn. App. 771–72, this court determined that the failure to provide an offer of proof rendered the defendant's claim unreviewable. In that case, the state objected to proposed testimony as hearsay, and defense counsel provided an explanation as to why the challenged evidence was admissible but did not provide an offer of proof. See id., 766. Because of the lack of an offer of proof, this court declined to review the claim, holding: "The record does not contain the substance of the excluded testimony, and, thus, leaves us without a basis on which to evaluate its relevance. In Connecticut, our appellate courts do not presume error on the part of the trial court. . . . Rather, the burden rests with the appellant to demonstrate reversible error. . . . The defendant bears the burden of providing this court with an adequate record to review his claims. Practice Book § 61-10. The present claim depends on a record that reflects the substance of [the witness'] testimony concerning the conversation that he allegedly overheard. This is necessary not merely to determine whether the court properly excluded the testimony, but *whether the court's ruling was harmful to the defense*." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Papineau*, supra, 771–72.

In the present case, the defendant's failure to make an offer of proof renders his claim unreviewable. Because the defendant did not provide an offer of proof and gave no explanation as to why the evidence was relevant, despite the court's specific request for an explanation, the court did not know the specific theory that supported the admission of the evidence or the nature of the proposed evidence. See *State* v. *Johnson*, supra, 171 Conn. App. 350–51. Not only could the court not make a full assessment of the evidence, but, without an offer of proof in the record, we cannot review the defendant's claim. Assessment of the present claim would require a record that reflects the substance of Collier's expected testimony regarding his opinion of the sock with a rock inside it, a record that we do not have. Moreover, without an offer of proof, we are not

able to determine whether the court's ruling was harmful to the defense.[20] See *State* v. *Papineau,* supra, 182 Conn. App. 772. Therefore, we decline to review the substance of the defendant's claim.

B

The defendant next claims that the court erred in allowing the state to cross-examine James Elderkin, a physician at the Department of Correction who treated the defendant in September, 2017, about a 2011 incident in which a police officer allegedly hit the defendant in the head with a baton. Specifically, the defendant argues that the court improperly rejected his arguments that the testimony was irrelevant. We disagree.

Before we address the substance of this claim, we set forth the applicable standard of review. "We review a trial court's evidentiary rulings for abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *State* v. *Gonzalez,* 315 Conn. 564, 593, 109 A.3d 453, cert. denied, 577 U.S. 843, 136 S. Ct. 84, 193 L. Ed. 2d 73 (2015).

The following additional facts are relevant to our resolution of this claim. At trial, the defense presented Elderkin's testimony to support the inference that the victim was the initial aggressor whose attacks caused the defendant head trauma. On cross-examination, the following colloquy took place between the prosecutor and Elderkin:

"Q. Are you aware whether or not [the defendant] has ever suffered a head injury in the past?

"A. Only what he reported to me and I recorded on this note of 9-22-17.

"Q. And what—and what was that?

"A. . . . He reported to me that he had intermittent headaches since head injury in July of 2017.

"Q. Okay. So he didn't report to you whether or not he had a head injury in February of 2011?

"A. Not that I recall and not that I recorded in the record.

"Q. So you don't have any information as to whether or not [the defendant] suffered a head injury in February of 2011; fair to say?

"A. Yes.

"Q. Okay. Are you aware that [the defendant] is currently suing the Middletown Police Department?

"A. No.

"Q. He didn't tell you that?

"A. No.

"Q. Are you aware that he's suing them because he's alleging—

"[Defense Counsel]: Objection.

"Q. —excessive force? . . .

"[Defense Counsel]: Objection is relevance."

After the court excused the jury from the courtroom, defense counsel argued that the evidence was not relevant, stating, "[t]his is New Haven, and it has nothing to do with Middletown in this case." The court then requested an offer of proof before ruling on the objection. Outside of the presence of the jury, the prosecutor proceeded to ask Elderkin about the lawsuit, which the defendant had brought, asserting that, in 2011, a Middletown police officer hit him in the head with a baton, causing injury. Elderkin was not aware of the lawsuit or the alleged incident. During the offer of proof, defense counsel, in turn, emphasized that the alleged incident occurred six and one-half years prior to the 2017 altercation and asked Elderkin, "would it be likely that [the defendant] would still be suffering from the injuries from six and a half years earlier . . . ?" Elderkin replied that he did not think he could say.[21]

In arguing that the evidence was admissible, the prosecutor asserted that the evidence "allows [the jury] to draw yet another inference for how these injuries could have occurred." Defense counsel responded that, "[p]articularly, since he can't say that, you know, that the injuries would be lasting six and a half years, it would be purely speculative for counsel to try to elicit some information about something that's totally unrelated to this incident both in time and in terms of circumstances." The court, however, disagreed and allowed the prosecutor to inquire about the 2011 incident.

On appeal, the defendant maintains that the evidence is irrelevant. Now, however, he newly asserts that the evidence was irrelevant because "the doctor did not have any personal knowledge with respect to the prosecutor's line of questioning" and that "the only evidence [regarding the 2011 incident] before the jurors was the doctor's testimony that hitting someone in the head with a baton could potentially cause a concussion. But because the prosecutor's questions are not in evidence, and because the doctor had no personal knowledge of the 2011 incident, there was no evidence before the jury that the defendant had even been hit with a baton."

The state, however, contends that the defendant failed to preserve his claim because his relevancy argument on appeal differs from the argument made at trial. Although we disagree with the state as to preservation,

we do agree that the defendant's change in argument impacts our review, as we cannot assess an evidentiary ruling using a theory of relevancy that was not presented to the trial court.

"[I]t is well settled that [o]ur review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection [to the trial court]. . . . This court reviews rulings solely on the ground on which the party's objection is based." (Internal quotation marks omitted.) *State* v. *Raynor*, 175 Conn. App. 409, 449, 167 A.3d 1076 (2017), aff'd, 334 Conn. 264, 221 A.3d 401 (2019). For example, a party who at trial objects to evidence only because its probative value is outweighed by its prejudicial effect cannot on appeal argue that the evidence was irrelevant because that specific legal ground of objection was not raised at trial. See id. However, these precepts do not render a claim unpreserved on appeal where a party merely changes the argument in support of the objection without attempting to change the grounds on which the objection was based. In the present case, the defendant maintains that the evidence is inadmissible because it is irrelevant—the same ground of inadmissibility raised at trial. The fact that he is attempting to assert a new argument does not render his claim unpreserved.

His claim is, however, confined to the relevancy arguments made before the trial court. "An appellant who challenges on appeal a trial court's exclusion of evidence is limited to the theory of admissibility that was raised before and ruled upon by the trial court. A court cannot be said to have refused improperly to admit evidence during a trial if the specific grounds for admission on which the proponent relies never were presented to the court when the evidence was offered." (Internal quotation marks omitted.) *State* v. *Papineau*, supra, 182 Conn. App. 769–70. This principle extends to situations in which an appellant asserts new arguments in support of unchanged grounds of objection. Therefore, on appeal, "[w]e must evaluate relevancy in accordance with the theory of admissibility and/or relevancy argued at trial, not on appeal." *State* v. *Watson*, 192 Conn. App. 353, 377 n.9, 217 A.3d 1052 (2019) (confining review to relevancy arguments made at trial despite fact that state provided additional arguments to justify trial court's determination that excluded evidence was irrelevant), aff'd, 339 Conn. 352, 261 A.3d 706 (2021).

Although the defendant insists that his claim on appeal asserts the same argument as his objection at trial, his argument on appeal is premised on a very different perspective of the evidence. On appeal, the defendant asserts that, because Elderkin had no knowledge of the incident and because the state did not produce any other proof as to the 2011 incident, Elderkin was not the appropriate witness to testify as to that

incident—rejecting the conclusion that there was any incident in 2011. At trial, however, the defendant's objection focused on the fact that Elderkin could not speculate as to whether injuries from the 2011 incident could persist through 2017—not challenging that the defendant was hit on the head with a baton in 2011. Although these two arguments are based on the same objection, that of relevancy, on close inspection they are dissimilar, as one asserts that the state failed to properly prove the 2011 incident while the other accepts that the incident occurred. If we were to consider the defendant's arguments on appeal regarding this evidence, we would be rejecting well established law and would be overstepping the well-defined role of an appellate court. See, e.g., *State* v. *Papineau*, supra, 182 Conn. App. 769–70; *State* v. *Raynor*, supra, 175 Conn. App. 448–49. Therefore, we are limited to assessing the relevancy of the testimony exclusively within the confines of the defendant's arguments before the trial court.

During the offer of proof, the state represented that the evidence would allow the jury to infer that the head injuries from which the defendant allegedly suffered were not the result of an attack by the victim on July 13, 2017, but, rather, were caused when a police officer hit the defendant on the head with a baton in 2011. Defense counsel argued that the evidence was not relevant because the incidents were six and one-half years apart and were unrelated "both in time and in terms of circumstances." Presented with these arguments, the court did not abuse its discretion in determining that the evidence was relevant.

Relevant evidence is evidence that has "any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. "One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence *tend to support* a relevant fact even to a slight degree, [as] long as it is not prejudicial or merely cumulative." (Emphasis in original; internal quotation marks omitted.) *Ulanoff* v. *Becker Salon, LLC*, 208 Conn. App. 1, 13,     A.3d     (2021).

Because the defendant raised the defense of self-defense, the issue of whether his alleged head injuries were caused by the victim was a material issue of fact for the jury's consideration in evaluating whether his use of physical force was justified under the circumstances. Section 53a-19 (a), which sets forth the defense of self-defense, provides: "Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person

to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." Evidence that the defendant's head injury occurred in 2011 and not during the July, 2017 altercation with the victim, has a tendency to make it less probable that the defendant had a reasonable belief as to the use or imminent use of physical force against his person, as it discredits the defendant's claim that the victim struck him on the head with the sock with a rock inside it. The fact that Elderkin, who examined the defendant in 2017, could not say conclusively that the 2011 incident caused the head injury does not render the evidence irrelevant.

## C

Finally, the defendant claims that the trial court erred in striking from defense counsel's closing arguments statements that the evidence presented at trial supported an inference that the victim attacked "at least one other person" with the sock with a rock inside it. Specifically, the defendant asserts that the court violated his sixth amendment right to the effective assistance of counsel by precluding defense counsel's remarks because the excluded statements were essential to his claim of self-defense. The defendant admits that this claim was not properly preserved but asserts that it is reviewable under *State* v. *Golding*, supra, 213 Conn. 239–40. Although the claim is reviewable, the defendant has failed to show that a constitutional violation actually occurred.

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) Id. "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *LaFontaine*, 128 Conn. App. 546, 550 n.3, 16 A.3d 1281 (2011).

In the present case, we review the defendant's claim because the record is adequate for our review, and the claim is of constitutional magnitude. See, e.g., *State* v.

*Cunningham*, 168 Conn. App. 519, 530–32, 146 A.3d 1029, cert. denied, 323 Conn. 938, 151 A.3d 385 (2016); id., 530 (claim that "the court violated [defendant's] sixth amendment right to argue [during closing arguments] that the state had failed to satisfy its burden to prove an essential element of the crime charged beyond a reasonable doubt" is constitutional in nature for purpose of second prong of *Golding*); see also *State* v. *Gonzalez*, 338 Conn. 108, 130, 257 A.3d 283 (2021) ("[t]he courts of this state have consistently recognized that the sixth amendment right to present a closing argument protects a criminal defendant's right to present his theory of the defense at the close of evidence").

The following facts are relevant to our resolution of this claim. During trial, the state entered two stipulations into evidence. The first stipulation provided: "On December 9, 1998, [the victim] was convicted of [a]ssault in the [f]irst [d]egree, in violation of Connecticut General Statutes [§] 53a-59 (a) (1)." The second stipulation provided that, on July 13, 2017, the night of the assault, "[t]he [victim's] ethanol level was the equivalent of a [b]lood [a]lcohol [c]ontent of .07."

Jillian Echard, a DNA technician at the forensic science laboratory of the Department of Emergency Services and Public Protection, testified at trial on behalf of the state as to DNA testing performed on the sock with a rock inside it. The sock was tested at three points: the bottom of the sock, the middle of the sock (where the rock was located), and the sock opening (which was tied in a knot). Testing showed the presence of DNA from three different individuals at the bottom of the sock. The victim's DNA profile was present.[22] The results were inconclusive as to whether the defendant was a contributor. As to the middle of the sock, testing showed the presence of DNA from two individuals: the victim was identified as a contributor and the results were inconclusive as to whether the defendant was a contributor.[23] At the sock opening, testing showed that only the victim's DNA was present; the defendant was not a source.[24] In addition, the prosecutor elicited testimony regarding how DNA is transferred. Specifically, Echard testified that "the force in which an object touches someone can . . . impact whether or not their DNA ends up on the object" and that, "the more frequent the contact that someone has with an object, the more likely it is that their DNA would end up on the object . . . ."

On cross-examination, defense counsel inquired further into how DNA can be transferred to an object when the object is used to strike someone. Specifically, defense counsel asked Echard, "if someone was struck on the face or the arm or wherever, that might cause DNA to be transferred . . . to the item that you examined; correct?" Echard responded: "Yes. If somebody was struck in the area with skin in such rigor, that

would expect to transfer cells over. . . . If you're striking somebody, then there's a little bit more rigor to it than just a casual."

During closing argument, defense counsel argued that the victim started the fight when he attacked the defendant at the bus stop. Defense counsel further argued that the bruises on the defendant's arms were evidence of his having attempted to block the victim's attacks. He also argued that the DNA evidence supported a conclusion that the defendant "probably was the guy on [the rock] end." Defense counsel continued: "But the other thing is that they had a third person's DNA on the rock end of the sock. From this we can infer at least one other person was struck, attacked." At this point, the prosecutor objected. The court sustained the objection and ordered the statement stricken. Moments later, defense counsel stated that, "[w]hile the results of the right rock end of the—the sock are inconclusive as to [the defendant], he's not eliminated, and he has—as he [had] been from the handle of the rock. From this you can infer that he was at least one of two people struck with the rock." The prosecutor did not object to this statement.

Later during his closing argument, defense counsel stated, "[n]ow, we wouldn't even be here but for the actions of [the victim]. The state and defense stipulated that in 1998 [the victim] was convicted of assault in the first degree. Now, at that time he was a man of about 40, 41, 42, and now some 20 years later, he's a 62 year old man, he apparently still hadn't learned his lesson. He's still engaging in assaultive behavior. We know that his attack on [the defendant] was not an isolated incident because of the DNA of the third person." The prosecutor then objected. Again, the court sustained the objection and ordered the statement stricken. The defendant now asserts that these rulings were in error.

Despite our determination that the defendant's claim is reviewable, we conclude that the court did not violate the defendant's right to present a closing argument, and, therefore, the defendant's claim fails under the third prong of *Golding*. In support of his claim, the defendant argues that his right to present a closing argument was violated because, in precluding the statement regarding the inference that the victim attacked other people with the sock with a rock inside it, the court prohibited him from arguing a significant issue that bore directly on his theory of defense, which was that the victim was the initial aggressor and the defendant acted in self-defense. In response, the state contends that the defendant "received an unfettered opportunity to raise every significant issue bearing directly on his theory of defense," and that the contested statements were based on facts not in evidence and on unreasonable inferences, and were, therefore, impermissible. We agree with the state that the inferences

were unreasonable and were based on facts not in evidence; therefore, the defendant's rights were not violated.

"We review the limits that the trial court imposes on a defendant's closing argument for an abuse of discretion. The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He [or she] may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant. He [or she] may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial. . . . It is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, to prevent the jury from considering matters in the realm of speculation and to prevent the jury from being influenced by improper matter that might prejudice its deliberations." (Internal quotation marks omitted.) *State* v. *Cunningham*, supra, 168 Conn. App. 533–34. Further, "[c]ounsel may comment upon facts properly in evidence and upon *reasonable* inferences to be drawn from them. . . . Counsel may not, however, comment on or suggest an inference from facts not in evidence." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Arline*, 223 Conn. 52, 58, 612 A.2d 755 (1992).

The defendant points out that the "[t]rial court permitted the prosecutor to ask the jurors to infer that because no witnesses saw [the victim] attack the defendant, they could infer the defendant was the initial aggressor.[25] But the trial court precluded the defendant [from] asking the jurors to infer, that based on facts in evidence, [the victim] had previously attacked a third person, and therefore more likely than not he also attacked the defendant." (Footnote added.) The defendant relies on the evidence presented at trial that (1) the victim had been convicted of assault in the first degree, (2) the victim had a blood alcohol content of 0.07 at the time of the incident underlying that assault conviction, (3) there was DNA belonging to individuals aside from the victim on the sock, (4) DNA could transfer if someone was struck with rigor, and (5) the defendant consistently maintained that the victim had struck him on the head several times with the rock in the sock. The defendant argues that, taken together, this evidence supports the inference that the victim "attacked 'another' or 'third' person . . . ." We reject this argument, as it would require reliance on facts not in evidence; furthermore, the inference the defendant draws is far from reasonable. See *State* v. *Arline*, supra, 223 Conn. 58.

Of the facts to which the defendant points, only the DNA evidence could possibly support a conclusion that the sock with a rock inside it was used to hit someone

other than the defendant. Significantly, however, there were no facts adduced at trial to indicate how or when such an incident could have occurred. Further, there was no evidence to support a conclusion that the DNA was on the sock as a result of an attack—the DNA could have been present for any number of reasons. Defense counsel's argument requires expansive speculation as to facts not in evidence in order to permit a conclusion that the victim used the sock with the rock inside it to attack a third party. Expressed differently, defense counsel's statements constituted an entirely unreasonable inference from the facts in evidence. For these reasons, the court did not abuse its discretion in excluding defense counsel's arguments, and, therefore, the defendant's right to present a closing argument was not abridged. Accordingly, the defendant's claim fails *Golding*'s third prong because the alleged constitutional violation does not exist.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] At various times throughout the trial court proceedings, the defendant was self-represented.

[2] General Statutes § 53a-60b (a) provides in relevant part that "[a] person is guilty of assault of an elderly . . . person . . . in the second degree when such person commits assault in the second degree under section 53a-60 . . . and (1) the victim of such assault . . . has attained at least sixty years of age . . . ."

General Statutes § 53a-60 (a) provides in relevant part that "[a] person is guilty of assault in the second degree when . . . (7) with intent to cause physical injury to another person, the actor causes such injury to such person by striking or kicking such person in the head while such person is in a lying position."

[3] According to the defendant, the two men did not know each other.

[4] EMTs cleaned the blood off of the defendant's hands and arms, assuming that the blood belonged to the defendant, while searching for injuries. Once the blood was removed from the defendant's hands, he informed the EMTs that the blood belonged to the victim. Aside from an abrasion on his left cheek and some bruising on his arms, the defendant had no injuries. The defendant was later taken to the emergency department where X-rays confirmed the lack of serious injuries.

[5] The defendant gave the same account during his police interview.

[6] Both passersby testified at trial. Neither observed the start of the fight, and they had no information as to how or why the fight began.

[7] The sock with a rock inside it was sent to the state forensics laboratory for DNA analysis.

[8] General Statutes § 53a-59a (a) provides in relevant part that "[a] person is guilty of assault of an elderly . . . person . . . in the first degree, when such person commits assault in the first degree under section . . . 53a-59 (a) (3) . . . and (1) the victim of such assault has attained at least sixty years of age . . . ."

General Statutes § 53a-59 (a) provides in relevant part that "[a] person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[9] The defendant subsequently filed a motion to withdraw his plea, asserting that he "unknowingly and involuntarily and unintelligently accepted [the] plea." The court denied the motion, noting that the defendant had been thoroughly canvassed before his plea was accepted.

[10] Although we refer to this as the second motion to correct for clarity, in actuality, the defendant filed at least five motions to correct, many while acting in a self-represented capacity. None of these motions is relevant to this appeal.

[11] The court also addressed various other motions that the defendant filed,

including a motion for a mistrial and a motion for a new trial, both of which the court denied.

[12] After the trial, on June 27, 2019, the court granted the defendant's motion to dismiss his trial counsel. New counsel was subsequently appointed.

[13] Although Attorney Paul V. Carty represented the defendant at the time of the filing of the first motion to correct, prior to oral argument on that motion, Judge Clifford granted the defendant's request to represent himself after a lengthy canvassing. Thus, the defendant represented himself during oral argument on the first motion to correct.

[14] In the written motion, however, the defendant asserted that "[i]t is unconstitutional to banish someone from a state. As such, the defendant accepted the plea agreement under false pretense/representation. The condition of banishing this defendant from the state has no rehabilitative purpose. The purpose of probation is to rehabilitate. The state never intended to honor its agreement with the defendant, as it is illegal to do so."

[15] Judge Clifford later filed a signed transcript of his oral decision as a memorandum of decision.

[16] Further, in addressing the merits of the claim in his reply brief, the defendant again focuses only on what Judge Clifford said and did.

[17] At oral argument before this court, counsel for the defendant expressly stated that the defendant was not arguing that Judge Fischer erred in determining that the issue was "not in front of this court." Specifically, counsel argued that, because Judge Fischer did not hear the motion or the basis of the motion, it would be unreasonable to appeal as to Judge Fischer pertaining to this issue.

[18] Although the defendant provides distinct arguments on each point, he presents these claims as one claim of error in his appellate brief. The state, however, responds to these claims separately. Similarly, we address them as such.

We also note that, in the opening paragraph of part II of his brief, the defendant maintains that the court's action "constituted an abuse of discretion and deprived the defendant of his constitutional right to present a defense as guaranteed by the sixth and fourteen amendments to the United States constitution. Specifically, the defendant claims that the trial court improperly excluded evidence and closing argument comments material to his claim of self-defense."

In the first two subsections of his argument, however, the defendant makes no mention of the constitution and provides no argument as to how the court's exclusion or admission of the evidence at issue violated his constitutional rights. Only in the final subpart, in which the defendant contests the exclusion of certain statements during defense counsel's closing argument, does the defendant provide any basis for a constitutional claim. See part II C of this opinion. Finally, in his reply brief, with respect to his first evidentiary claim, the defendant argues that, "[t]he state overlook[ed] the fact that the defendant has also claimed the trial court deprived him of his constitutional right to present a defense," again without providing any analysis to support his alleged claim of constitutional violation.

To the extent that the defendant is seeking to raise constitutional claims related to his first two evidentiary claims, any such claim is inadequately briefed. See, e.g., *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005) ("It is well settled that claims on appeal must be adequately briefed . . . . Claims that are inadequately briefed generally are considered abandoned." (Citations omitted.)), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006); *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004) ("[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly" (internal quotation marks omitted)).

[19] Section 4-1 of the Connecticut Code of Evidence provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence."

[20] The defendant argues that, despite the lack of an offer of proof, "harm can be shown regardless of Collier's response to defense counsel's question. . . . If Collier had responded in the affirmative, it would support the defendant's theory of the case that he believed he had to use deadly force against [the victim] to [defend] himself, and that belief was reasonable. If Collier responded in the negative . . . it would support an inference that, although deadly force may not have been warranted in defending himself from [the victim], some level of force was justified, and that belief was reasonable." We are not persuaded. Such a harm analysis improperly requires pure specu-

lation, assumes that Collier could have responded only "yes" or "no," and relies on suspect reasoning. As the state aptly observes, "[the defendant's] assertion fails to remove the defendant's claim from the realm of speculation because Collier may not have provided a simple 'yes' or 'no' response. This is especially so given counsel's use of the phrase 'deadly weapon,' which carries independent legal significance, and may have given Collier pause. . . . Without knowing what Collier would have said, the defendant cannot meet his burden of showing harm." (Citation omitted.)

[21] The entirety of the offer of proof was as follows:

"[The Prosecutor]: So you're not aware that he's suing the Middletown Police Department?

"[Elderkin]: Correct. . . .

"[The Prosecutor]: And that he was forced to go to the hospital?

"[Elderkin]: Correct.

"[The Prosecutor]: And that was during a struggle inside of his cell? You're not aware of that?

"[Elderkin]: No.

"[The Prosecutor]: Okay. Could hitting someone in the head with a baton potentially cause a concussion?

"[Elderkin]: Yes.

"The Court: What time frame on that?

"[The Prosecutor]: 2011.

"The Court: Oh, 2011. Did you want to inquire on the offer?

"[Defense Counsel]: Yes. . . .

"[Defense Counsel]: Good morning, Doctor. That February, 2011 incident was approximately six and a half years prior to the July 17 incident; is that correct?

"[Elderkin]: Yes.

"[Defense Counsel]: All right. And would—would it be likely that [the defendant] would be still suffering from the injuries from six and a half years earlier and complaining about that in 2017?

"[Elderkin]: I don't think I could say."

[22] Specifically, Echard testified: "[A]t least 100 billion times more likely to occur if [the DNA] originated from [the victim] and 2 unknown individuals as opposed from it originating from 3 unknown individuals."

[23] Specifically, Echard testified: "[A]t least 100 billion times more likely to occur if [the DNA] originated from [the victim] and 1 unknown individual as opposed to it originating from 2 unknown individuals."

[24] Specifically, Echard testified: "[A]t least 100 billion times more likely to occur if [the DNA] originated from [the victim] than if it originated from an unknown individual."

[25] We note that defense counsel made no objections during the prosecutor's closing arguments.